[Civ. No. 36298. First Dist., Div. Four. Feb. 9, 1976.]

ERNEST PATRICK KIERNAN et al., Plaintiffs and Appellants, v. UNION BANK, Defendant and Respondent.

**COUNSEL**

B. James Finnegan for Plaintiffs and Appellants.

Pettit, Evers & Martin and Martin Quinn for Defendant and Respondent.

## OPINION

CHRISTIAN, J.—Ernest Patrick Kiernan and Nicholas A. Misciagna have brought this action against Union Bank, to recover losses incurred when the bank paid forged checks which had been drawn on their account by their own bookkeeper. The court granted a motion by the bank for partial summary judgment, excluding recovery on all forged checks which had been paid and returned more than one year prior to the filing of, the complaint. A jury later found for plaintiffs as to the remaining checks. Plaintiffs have appealed from the partial summary judgment and from the judgment on the jury verdict, contending that they should have been allowed recovery on the older checks as well.

Appellants argue that the court erred in concluding from the pleadings and the affidavits that the statute of limitations had run as to some of the checks. An action against a bank for payment of a forged instrument must be brought within one year: "Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subdivision (1)) discover and report his unauthorized signature . . . is precluded from asserting against the bank such unauthorized signature . . ." (Cal. U. Com. Code, § 4406, subd. (4); see also Code Civ. Proc., § 340, subd. 3.)[1] The statement of account is "made available" so that the limitation begins to run "when a bank sends to its customer a statement of account accompanied by items paid in good faith . . ." (§ 4406, subd. (1).) A statement is "sent" upon deposit in the mail with appropriate postage. (§ 1201, subd. (38); cf. § 1201, subd. (26) ["notifies," and "receives" notification].) Because care, i.e., the lack of negligence, on the part of either customer or the bank does not affect the running of the period of limitation, the one-year statute of limitation "places an absolute time limit on the right of a customer to make claim for payment of altered or forged paper . . ." (See U. Com. Code comment, § 4406.) There remains a requirement, for the period of limitation to run, that the items had been "paid in good faith." (§ 4406, subd. (1).) Good faith is defined as "honesty in fact in the conduct or transaction concerned." (§ 1201, subd. (19).) ■ There is neither an allegation, nor any evidence, that the bank acted dishonestly; hence there is no triable issue of fact which would preclude the granting of a summary judgment. The statute had run on all forged checks paid and made available to appellant before May 11, 1970 (one year prior to commencement of this action);

[1]All references are to the California Uniform Commercial Code unless otherwise noted.

therefore, it was proper to grant a partial summary judgment excluding the older group of checks.

Appellants contend, citing *Pac. Coast Cheese, Inc.* v. *Sec.-First Nat. Bk.* (1955) 45 Cal.2d 75, 78-79 [286 P.2d 353], that respondent bank should have been required to justify its charging of appellants' account for the payment of forged checks by showing both (1) that the bank was free of negligence and (2) that appellants, as a bank customer, were negligent or should be estopped to deny the correctness of the payments. But the decision predates the adoption of the statute of limitations in section 4406, subdivision (4) (adopted Stats. 1963, ch. 819), and was superseded by it.

Appellants also argue that the period of limitations does not begin to run until the time a bank's customer actually receives the statement of account. It is claimed that although appellants' statements were intercepted by their own agent, there is a question of fact concerning whether respondent knew or should have known that appellants' dishonest employee was withholding from appellants the information contained in the bank statements. But the statute explicitly excludes such a theory; it provides that limitation begins to run from the time a bank makes available to its customer a statement of account accompanied by the items paid. The statement of account is made available whenever the bank (1) sends or mails the statement to the customer, (2) holds the statement pursuant to a request or instructions of the customer, or (3) "otherwise in a reasonable manner makes the statement and items available to the customer, . . ." (§ 4406, subd. (1); § 1201, subd. (38).) Section 4406 places a burden upon a bank customer to examine his statements regularly and discover any forgeries or alterations on any item included therein so long as the bank has met its duty of making available the statement of account and items paid to the customer. (See U. Com. Code, § 4406, comments 1, 2, 3, 7.) The fact that the employee of a bank's customer has concealed a forgery does not obviate the customer's responsibility to examine his own bank statements.

Appellants contend that without regard to the larger issue discussed above, the court erred in holding that the checks listed in the May 1, 1970, bank statement were barred. The theory is that the court was not justified in inferring that the May 1 statement had been received before May 11, 1970, one year before the date appellants filed their complaint. But it is unnecessary to determine the date on which appellants received

the bank statement; the statute begins to run from the date the statement is made available to the customer, i.e., the date on which the statement is mailed by the bank to the customer. (§ 4406, subds. (1), (4); § 1201, subd. (38).) Respondent's affidavits are uncontradicted that the date of mailing of the May 1, 1970, bank statement was on or before May 6, 1970. Therefore, there is no triable issue of fact concerning the checks reflected on the May 1 statement.

■ Appellants also argue that the affidavits do not establish that the checks were mailed no later than May 6, 1970. Affidavits in support of or in opposition to a motion for summary judgment must (1) show that they are derived from knowledge, (2) set forth admissible evidence, and (3) show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. (Code Civ. Proc., § 437c.) Two declarations were offered in support of the motion for partial summary judgment by respondent: the declaration of William Vencill, who was vice-president of respondent in May 1970, and the declaration of Irene Rosa, who was operations officer of respondent in May 1970. Both declarations state that it was the unvarying practice of respondent to mail to each customer with a commercial checking account a monthly statement listing all checks paid on that account since the previous statement, together with all cancelled checks, by the third business day of each month. Rosa stated that based on her personal knowledge of that procedure, she was certain that appellants had been mailed their statement and checks each month from January 28, 1965, until the account was closed in June 1971. Vencill declared that, based on his knowledge of the customary business practice of respondent, he was sure that the May 1, 1970, statement was mailed with all cancelled checks to appellants on or before Wednesday, May 6, 1970. Testimony that an act occurred, based on the witness' knowledge that the performance of that act is part of an invariable and long-continued business custom or habit, is treated as though the performance of the act itself is within the personal knowledge of the witness. Such evidence is admissible and the witness is competent to testify thereto. (*Hughes* v. *Pacific Wharf etc. Co.* (1922) 188 Cal. 210, 224 [205 P. 105]; cf. *In re Lopez* (1970) 2 Cal.3d 141, 146-147 [84 Cal.Rptr. 361, 465 P.2d 257].) The affidavits were sufficient to support the summary judgment.

■ Appellants assert that respondent was estopped to assert the statute of limitations because false representations by respondent prevented appellants from becoming aware of their cause of action for the payment of the forged checks. ■ " 'One cannot justly or

equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.' " (*Carruth* v. *Fritch* (1950) 36 Cal.2d 426, 433 [224 P.2d 702, 24 A.L.R.2d 1403].) But one of the elements required for estoppel is justifiable ignorance of the true facts by the party claiming estoppel. It is undisputed that for a period of approximately six years appellants' bookkeeper was entrusted with the responsibility of reconciling each month's bank statement with the checks actually written on behalf of appellants. During that six years, the bookkeeper forged checks drawn upon the account, and deceitfully concealed the forgeries from appellants. Notice of the bookkeeper's fraud is imputed to appellants. ▆▆ "[W]hen the agent to whom the duty of examination is intrusted is a dishonest employee who by forgery has obtained funds of his employer from the bank, and whose consequent adverse interest causes him to conceal from his employer the circumstances which would naturally have been disclosed in the course of a proper verification, the employer, though not imputed with knowledge of the fraud of his faithless agent, is, as principal, chargeable with such information as an honest employee, unaware of the wrongdoing, would have acquired from the examination of the canceled checks and bank statements." (*Basch* v. *Bank of America* (1943) 22 Cal.2d 316, 327 [139 P.2d 1].) Where inquiry would have led to the discovery of the fraud, the party seeking estoppel of the statute of limitations will be charged with that knowledge as of the time he should have discovered it. (See *Consolidated R. & P. Co.* v. *Scarborough* (1932) 216 Cal. 698, 704 [16 P.2d 268]; *Banco Mercantil* v. *Sauls Inc.* (1956) 140 Cal.App.2d 316, 325 [295 P.2d 55].) Because appellants had imputed notice of the bookkeeper's activities by reason of their employment relationship with her, they cannot shift their burden of inquiry from themselves to respondent in order to invoke an estoppel against the running of the statute of limitations. .

Affirmed.

Caldecott, P. J., and Rattigan, J., concurred.