[No. B161684. Second Dist., Div. Four. Jan. 6, 2004.]

REBECCA A. RICKLEY, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Lloyd W. Pellman, County Counsel, Lawrence B. Launer, Assistant County Counsel, and Diane C. Reagan, Principal Deputy County Counsel, for Defendant and Appellant.

Law Offices of Natasha Roit and Natasha Roit for Plaintiff and Respondent.

**OPINION**

**VOGEL (C.S.), P. J.—**

## INTRODUCTION

█ This appeal is from an order granting a new trial, overturning a summary judgment in favor of the taxing authority, County of Los Angeles. The issue presented is whether respondent taxpayer may challenge assessed real property taxes and penalties in an action for declaratory relief and avoid the limited remedies and procedures provided by California Constitution, article XIII, section 32 and the operative provisions of the Revenue and Taxation Code. We hold respondent is precluded, as a matter of law, from pursuing her claim in declaratory relief and that the prescribed constitutional and statutory provisions to challenge the assessment of real property taxes and penalties are mandatory. We, therefore, reverse.

## FACTUAL BACKGROUND

Respondent Rebecca A. Rickley is the owner of record of two parcels of real estate in Los Angeles County. She took title by grant deed on March 4, 1997. On or about September 9, 1998, respondent received from the Los Angeles County Tax Collector four joint consolidated tax bills, totaling $1,254.88.[1] Each tax bill stated, "Payment will be accepted without penalty until 10-31-98," and that a 10 percent penalty would be imposed if not paid on or before that date.

---

[1] Tax bill No. 98-0450207 for $55.35; tax bill No. 98-0450208 for $534.57; tax bill No. 98-0550278 for $63.07; and tax bill No. 98-0550279 for $601.89.

In November 1998, the County mailed to respondent four notices of enforcement for each tax bill, informing her, "If payment is not made on or before 11/21/98 legal proceedings will be instituted." The notices also included the statement that "Additional penalties will accrue at the rate of 1 1/2% per month beginning at 5:00 p.m. on the last day of the second month after delinquency," and that enforcement may include recordation of a lien against the taxpayer's personal and real property.

A year later, on November 15, 1999, the County sent respondent four pre-offset debt notification letters; each stated the amount of tax owed based on the previously mailed tax bills. The letters informed appellant that the tax had not been paid and advised that payment of the amount of tax(es) ($60.88, $588.02, $69.37, and $662.07) "is only good through November 30, 1999," and that "[a]dditional penalties will accrue at the rate of 1.5% per month hereafter." The letter mistakenly referred to the wrong tax year, "1999," when it should have referred to tax year 1998.

On November 30, 1999, respondent mailed to the County four checks which corresponded to the amounts stated in the four pre-offset debt notification letters. The County contends the amount paid was insufficient. According to the County's policy, payments are applied first to reduce accrued penalties before being applied to taxes owed. Respondent disagreed with the County and made no further payments. On May 10, 2000, the County recorded liens on respondent's property.

The foregoing recitation of the record omits numerous references to other communications between respondent and her counsel and representatives of the County. Such communications consisted of respondent and her attorney asserting that the taxes were not owed or were paid or that representatives of the County admitted no taxes were owed. The County contradicted all such assertions. These exchanges are essentially irrelevant because the core issue of this appeal is a dispositive question of law: May a taxpayer file an action for declaratory relief to determine the validity of the County's claim that she has not paid timely and in full the real property taxes assessed against her property *or* must the taxpayer exhaust her administrative remedies, pay the taxes and penalties the County contends are owing, and then sue for a refund? We conclude the latter is the correct approach.

## PROCEDURAL BACKGROUND

On March 7, 2001, respondent filed a verified complaint alleging causes of action for declaratory relief, defamation, and abuse of process. In essence the complaint alleges that respondent paid the tax bills in full, but the County recorded liens on her property even though no taxes or penalties are owed.

From this premise, respondent seeks declaratory relief for a determination that she is not delinquent on her property taxes and the County unlawfully recorded liens against her property. The same allegations are the predicates for her causes of action for defamation and abuse of process.

The County ultimately moved for summary judgment on the ground that respondent may not obtain a judicial determination of whether she is delinquent on her property tax by declaratory relief, but instead is required as a matter of law to first pay the amount of taxes with accrued penalties, exhaust her administrative remedies and, if unsuccessful, then sue for a refund.[2] The County also asserted immunity from the tort causes of action based on Government Code sections 815.2 and 860.2.

The trial court granted the County's motion for summary judgment on March 11, 2002, reciting its reliance on California Constitution, article XIII, section 32, Government Code sections 815.2, 860.2, and 912.4 et seq., and the relevant provisions of the Revenue and Taxation Code.[3] The order specifically took judicial notice that payments on the consolidated tax bills were due on October 31, 1998; that respondent's payments were made on "or about" November 30, 1999; that penalties were calculated on the delinquent taxes pursuant to section 2512; that the payments made by respondent on November 30, 1999, were applied as partial payments to amounts due on the "tax bills" in accordance with section 2927.6; that, based on a mistake in the November 15, 1999 "county issued document, [respondent] tendered what she thought was the full amount [of taxes and penalties due] when in fact [it] was [insufficient]"; and "[t]hat there is no triable issue of fact." The order also provided that the cause for declaratory relief and all other equitable remedies are precluded by the Revenue and Taxation Code. The judgment was filed on March 22, 2002.

Respondent timely moved for a new trial on two grounds: (1) there was insufficient evidence to prove the Board of Supervisors authorized the tax collector to accept and apply partial payment of taxes in accordance with the Revenue and Taxation Code; and (2) the trial court committed an error of law because *Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310 [87 Cal.Rptr.2d 423, 981 P.2d 52] supports respondent's proposition that a taxpayer may file a declaratory relief action to challenge assessed taxes without first paying the delinquent taxes and penalties. (Code Civ. Proc., § 657, subd. 7.)

The County filed an opposition to the new trial motion that included the declaration of Donna Doss, an assistant tax collector for the Office of the

---

[2] County cites Revenue and Taxation Code section 5096 et seq.

[3] All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

County of Los Angeles, who is responsible for tax collection operations. The substance of her declaration is summarized as follows:

(1) Four consolidated tax bills, four notices of enforcement and four pre-offset debt notification letters were mailed to respondent and informed her by their terms of the amount owing, the penalties that could be and were imposed, in the sequence recited in the factual background above.

(2) In November 1999, respondent sent four checks dated November 30, 1999, payable to the "Tax Collector," each in an amount that corresponded to the respective pre-offset debt notification letters. "These checks were received over a year after the . . . Notices of Enforcement were sent to [respondent], and thirteen months after the payments were due."

(3) "When the payments were received, on or about December 1, 1998 [*sic*], they were 13 months late. The 10% penalty attached on the date the bills became delinquent, November 1, 1998, and the 1 1/2% additional penalties accrued monthly thereafter. On the date the checks were written, November 30, 1999, eleven months of 1 1/2% penalties had accrued on top of the 10% penalties. Therefore, on November 30, 1999 the following additional penalties had attached to the bills:

| | | | [Eleven Months of] Additional 1 1/2% Penalties |
| | | 10 % Penalty | As of Nov. 30, |
| Bill No. | Due on 10/31/98 | Nov. 1, 1998 | 1999 |
| --- | --- | --- | --- |
| 98-0450207 | $55.35 | $5.53 | $9.12 |
| 98-0450208 | $534.57 | $53.45 | $88.20 |
| 98-0550278 | $63.07 | $6.30 | $10.41 |
| 98-0550279 | $601.89 | $60.18 | $99.31" |

(4) The County calculated the amount due as of February 25, 2002, totaling $288.05.[4]

---

[4] As of February 25, 2002, the current amounts due on respondent's tax bill are $12.76 + $122.78 + $14.46 + $138.05 = $288.05

(5) The allocation of payments received from respondent by the County was made in "accordance with Revenue and Taxation Code Section 2927.6, which requires partial payments to be applied first to all penalties, then to the tax due."[5]

On May 10, 2002, the trial court granted respondent's motion and issued an order for new trial, finding there was insufficient evidence to prove that the County Board of Supervisors had approved of the policy of accepting and applying partial payment of taxes in accordance with section 2927.6.[6] The trial court did not address respondent's second contention based on *Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th 310. This appeal ensued.

## DISCUSSION

### Appealability

■ Code of Civil Procedure section 904.1, subdivision (a)(4) provides that an appeal may be taken from an order granting a new trial. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 858–859 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

"Generally, the new trial order will be affirmed if it should have been granted on *any ground stated in the motion,* regardless of whether the trial judge specified that ground and even if the judge failed to specify any grounds." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1989) ¶ 8:220, p. 8-110 (rev. # 1, 2002).) However, "if it

---

[5] In a supplemental declaration by Assistant Tax Collector Doss, she avers that the allocation of payments was made pursuant to section 2636, another provision permitting partial payments and requiring the approval of the Board of Supervisors. In opposition to respondent's motion for new trial, the County filed a document demonstrating the Board of Supervisors had approved the acceptance of partial payments on July 24, 1997. In response to this court's inquiry, county counsel advises that Los Angeles County does not extend partial payment benefit pursuant to section 2927.6 to current unsecured taxes, but does apply the partial benefit payment pursuant to section 2636 to unsecured taxes that have rolled over onto the delinquent roll. Both sections 2927.6 and 2636 permit the tax collector to accept partial payment of taxes if the County Board of Supervisors approves.

[6] The trial court's minute order states, ". . . there is no material evidence in the record indicating that the defendant obtained approval from the Board of Supervisors to institute a partial payment policy consistent with Section 2927.6. At the time of the underlying motion [for summary judgment] hearing, there was insufficient evidence presented to the court. The declaration of Donna Doss [an Assistant Tax Collector] does not establish that this case was one that was designated as a partial payment matter. While Doss' declaration establishes that she is sufficiently knowledgeable to testify to state the current policy and Board approval of the general partial payment policy, there is nothing in her declaration that specifically indicates that this matter/case was ever designated or treated as a partial payment case. Nor is there any other evidence that would indicate the same."

appears on appeal that a trial court in granting a new trial based its order exclusively upon an erroneous concept of legal principles applicable to the cause, its order will be reversed." (*Conner v. Southern Pacific Co.* (1952) 38 Cal.2d 633, 637 [241 P.2d 535].)

## I

The trial court's reliance on the insufficiency of the evidence to prove that the Board of Supervisors approved the policy of partial payments is without merit. "The California Constitution limits the power of the trial court to grant a new trial 'unless, after an examination of the *entire cause*, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 1993) ¶ 18:352.1, p. 18.71 (rev. # 1, 2003).)

The declaration of Assistant Tax Collector Doss states the allocation of respondent's payment "was made in accordance with Revenue & Taxation Code Section 2636, which requires partial payments to be applied first to all penalties, then to the tax due." Evidence Code section 664 provides that "It is presumed that official duty has been regularly performed." Therefore, Doss's declaration overcomes any contention that the County's application of a partial payment policy is invalid. It was incumbent on respondent to rebut the presumption and prove the Board of Supervisors had not approved the acceptance of partial payments. More importantly, this is not a dispositive issue. It is only germane to the extent it may support respondent's claim that her payments were not correctly applied, an issue properly raised in an action for refund.

## II

Respondent, relying on *Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th 310, contends she is exempt from the conventional legislative scheme that requires a taxpayer to pay the tax and file a claim for administrative relief and, if the claim is denied, to sue for a refund. (§§ 5096–5099, 5140 et seq.) Respondent's reliance on the Supreme Court's holding in *Agnew* is misplaced.

There, the taxpayer, Agnew, purchased a thoroughbred racehorse and sold a syndicate share in another racehorse. The State Board of Equalization assessed a tax on both transactions and the taxpayer unsuccessfully filed for a redetermination. At the conclusion of the administrative proceedings, the Board issued an adverse notice of determination, assessing a use tax of

$48,000, plus $64,313.42 accrued interest on the purchase of the thorough-bred horse and a sales tax of $516,750, plus $708,648.86 accrued interest on the sale of the syndicate interest.

Agnew paid the use tax and the accrued interest and filed an action for refund of those sums and a companion action for declaratory relief to compel the Board to immediately return to him the accrued interest of $64,313.42. He also paid the sales tax of $516,750, but not the accrued interest, and filed another action for refund, including a cause of action for a declaration that the Board may not require the payment of interest prior to acting upon a refund request. The Board demurred and "contended that article XIII, section 32 [of the California Constitution] and section 6931 preclude lawsuits which prevent or enjoin the collection of the sales and use taxes, and that exhaustion of administrative remedies was required because a tax refund action is the exclusive means of obtaining judicial review of state tax proceedings. . . . The Board reasoned that by mandating payment of interest on delinquent taxes in section 6591, the Legislature manifested an intent that interest be part of the tax." (*Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th at pp. 316–317, fn. omitted.) The trial court ruled for the Board and declared that the taxpayer must pay the interest as well as the tax before suing for refund. Agnew appealed.

The Court of Appeal reversed. It held that the action was not one to prevent or enjoin the collection of a tax because the taxes had been paid, and the taxpayer is not obligated to prepay the interest because it does not attach to the tax and cannot be included in the deficiency. The County petitioned for review and the Supreme Court affirmed the Court of Appeal.

The Supreme Court declared that the requirement of paying the tax before filing an administrative claim for refund is mandatory. The only issue presented was whether accrued interest is part of the tax and must be prepaid as a condition to seeking a refund pursuant to section 6591, subdivision (a): "Any person who fails to pay any tax to the state or any amount of tax required to be collected and paid to the state . . . within the time required shall pay a penalty of 10 percent of the tax or amount of the tax, in addition to the tax or amount of tax, *plus interest at the modified adjusted rate per month,* or fraction thereof, established pursuant to Section 6591.5, from the date on which the tax or the amount of tax required to be collected became due and payable to the state until the date of payment." (*Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th at p. 317, fn. 4, italics added.)

The court held that "Nothing in the history of article XIII, [section] 32 supports the argument that the constitutional references to 'tax' encompass interest as an integral part of the tax, and that article XIII, section 32 mandates prepayment of interest as well as taxes as a prerequisite to a

challenge to the validity of a tax assessment or the amount thereof. . . . [¶] From 1910 to the present, the Constitution has provided only that the tax must be paid. It now states unambiguously that a refund action may be maintained 'after payment of a tax.' (Art. XIII, § 32.) Since the language is clear and any ambiguity would have to be resolved in favor of the taxpayer . . . , article XIII, section 32 may not be construed, as the Board would have it, to require prepayment of accrued interest as well as the tax as a condition to litigation challenging the tax." (*Agnew v. State Bd. of Equalization, supra,* 21 Cal.4th at pp. 326–327 [citation omitted].)

██ *Agnew* is simply not applicable to the present appeal because it involved the imposition of interest on an assessed and delinquent sales and use tax as provided by section 6591. The collection of real property taxes does not impose interest on delinquent real property taxes but instead imposes penalties pursuant to section 2617 ("All taxes due November 1, if unpaid, are delinquent at 5 p.m., or the close of business, whichever is later, on December 10, and thereafter a delinquent penalty of 10 percent attaches to them") and section 2922, subdivisions (a) and (d). ("(a) Taxes on the unsecured roll as of July 31, if unpaid, are delinquent at 5 p.m., or the close of business, whichever is later, on August 31 and thereafter subject to a delinquent penalty of 10 percent"; "(d) Unsecured taxes remaining unpaid . . . after the 10-percent penalty attaches shall be subject to an additional penalty of 1 1/2 percent attaching on the first day of each succeeding month on the amount of the original tax. The additional penalties shall continue to attach until the time of payment or until the time a court judgment is entered for the amount of unpaid taxes and penalties, whichever occurs first.") Unlike section 6591, pertaining to sales and use taxes, there is no provision for accrual of interest on real property taxes.

Respondent argues that the County's distinction between "interest" and "penalties" is "porous." Her rhetoric is premised on the fact that the penalties assessed are expressed in percentages and are therefore the same as interest. The fact that penalties and interest are both calculated as percentages of the tax does not make them synonymous. To conclude otherwise is to engage in a categorical syllogism.

In *Agnew,* the Supreme Court expressly distinguished interest as a distinct aspect of taxes: "Of particular note is the Legislature's treatment of interest as a distinct item in the sections of the Sales and Use Tax Law which govern the collection of delinquent taxes. Those provisions uniformly identify taxes, penalties, and interest as items to be recovered. These statutes refer to 'tax or interest,' or make express reference to interest in addition to the unpaid tax on which it has accrued when identifying an amount to be collected, a tax lien to be imposed, or disposition of sums collected." (*Agnew, supra,* 21 Cal.4th at pp. 327–328.)

The court reviewed its decision in *Weston Inv. Co. v. State of California* (1948) 31 Cal.2d 390 [189 P.2d 262], relied on by the Board to argue that provisions for the payment of interest on delinquent taxes is comparable to penalties imposed for failure to timely pay taxes. The comparison was rejected as follows: sections 2617 and 2618 provide that a delinquent penalty "attaches to [those] taxes" so that "[t]here can be no question that delinquent penalties are a part of the tax," "[and] together with the tax" they became part of the tax lien. (*Weston,* at p. 393.) The point is that interest is not the equivalent of penalties and the cases have not treated them as the same. The *Agnew* court acknowledged authority for the proposition that delinquent penalties become part of the tax, distinguishing between interest and penalties. (*Agnew, supra,* 21 Cal.4th at p. 332, citing *Camden Fire Ins. Assn. v. Johnson* (1941) 42 Cal.App.2d 528, 529–531 [109 P.2d 447]; see also *Sonleitner v. Superior Court* (1958) 158 Cal.App.2d 258, 263 [322 P.2d 496] ["It is well settled in this state that a penalty which is created by statute for failure to pay a tax assessment becomes part of the tax"].)

There is absolutely no reference to interest in the tax bills, notices of enforcement, or pre-offset debt notification letters sent to respondent. Respondent was informed that if her tax bill was not paid on or before October 31, 1998, the tax would be subject to a 10 percent delinquent penalty and if the taxes remained unpaid on the last day of the second month after the 10 percent penalty attached, an additional penalty of 1 1/2 percent would attach on the first day of each succeeding month. (§ 2922, subds. (a), (d).) Respondent has totally misconstrued the holding of *Agnew* to justify her refusal to pay the property taxes and penalties and to exhaust applicable administrative remedies and pursue a claim for refund. Moreover, *Agnew* does not allow respondent to sue the County for declaratory relief in violation of section 4807.[7]

Respondent did not pay the assessed taxes due on October 31, 1998. She was informed by the pre-offset debt notification letters that the County records indicated specific sums were due and payable.[8] The letters incorrectly stated that the amounts due were only good through November 30, <u>1999</u> when the amounts due were only good through November 30, <u>1998</u>. In fact by November 30, 1999, the 10 percent penalty had attached as had the additional penalties of 1 1/2 percent per month. The pre-offset notification

---

[7] Section 4807 provides: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of *property taxes* sought to be collected." (Italics added.)

[8] The amounts due in each of the four pre-offset debt notification letters are respectively, $60.88, $588.02, $69.37, $662.07. The purpose of these letters is not only to recover taxes, but to advise the taxpayer that any claim it may have against the state will be offset by the taxes owed.

letters indicated amounts that were less than the actual amount of taxes and penalties due through November 1999. Consequently, respondent's payments in November 1999 were insufficient to satisfy the total amount of taxes and penalties that had accrued at that time according to the calculation of the County.

The County clearly made a mistake and respondent's consternation is understandable, but the County is not estopped because of its erroneous reference to the wrong year. Respondent received her tax bills in September 1998 and notices of enforcement in November 1998 and was informed of the amount of the taxes assessed, the date payments were due, and the penalties that would be imposed for delinquent payment. More fundamentally, " 'Under well-settled rules of law state officers and state agencies have no power to estop the state from collecting a validly owed tax.' " (*Transamerica Occidental Life Ins. Co. v. State Bd. of Equalization* (1991) 232 Cal.App.3d 1048, 1055 [284 Cal.Rptr. 9].) The point is, the County claims that respondent has not paid her taxes and penalties in full and she disputes that claim. At its core, this is a tax dispute.

"Article XIII, section 32 provides that an action to recover an allegedly excessive tax bill may be brought 'after payment of that tax . . . .' Additionally, the section bars a court from issuing any 'legal or equitable process . . . against this State or any officer thereof to prevent or enjoin the collection of any tax.' Read together, these two portions of section 32 establish that the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid. [¶] The important public policy behind this constitutional provision 'is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.' [Citation.] 'The fear that persistent interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions. [Citation.]' " (*State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638–639 [217 Cal.Rptr. 238, 703 P.2d 1131].)

"The rule in this state is that injunctive and declaratory relief will not be granted where there is a plain, complete, speedy, and adequate remedy at law. [Citation.] . . . Any remedy that allows a taxpayer to challenge a tax already collected, and to press any constitutional claims he or she may have, has been found to constitute ' "a plain, speedy and efficient remedy," ' barring equitable relief." (*Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1138 [113 Cal.Rptr.2d 690].) The *Flying Dutchman* court found it manifest that the San Francisco Municipal Code afforded an adequate legal remedy to taxpayers seeking a refund for

taxes alleged to have been illegally collected. The ordinance is substantially similar to the Revenue and Taxation Code applicable here. (§ 5096 et seq.) Accordingly, respondent must pay the disputed amount, exhaust her administrative remedies, and sue for a refund. Respondent argues that the *Flying Dutchman* decision is distinguishable because there it was undisputed that the taxpayer had not paid any taxes at all. How that contrasts with the present matter, where the County alleges that not all the taxes and penalties due have been paid, is not evident. For taxpayers who dispute that any tax is owed the rule is " 'pay first, litigate later.' " (*Id.* at p. 1137.)

Respondent, relying on *Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665 [85 Cal.Rptr.2d 414], argues that she is entitled to equitable relief, ignoring the significant difference between the facts of that case and the present one. *Brown* involves documentary stamp taxes imposed by the County for the recordation of deeds and other conveyances of real property. There the plaintiff filed a declaratory relief action against the County to challenge the method it used to calculate the documentary transfer taxes required as a condition of recording the trustee's deed. The appellate court held that section 4807 did not apply, and the plaintiff was therefore entitled to declaratory relief, because the County's stipulation that the plaintiff " 'frequently purchases property at trustee's sales' " meant the County would otherwise continue to tax her at the wrong rate. Here, the issue does not involve the calculation of documentary stamp taxes and there are no established facts or stipulations to justify the avoidance of section 4807. Also, in *Brown, plaintiff* did pay the taxes prior to filing her action. (*Id.* at p. 670.) The *Brown* decision does not shore up respondent's effort to avoid the "pay first, litigate later" rule.

Respondent's complaint essentially demonstrates that her request for declaratory relief is misguided. She alleges in part, "Plaintiff further alleges an actual controversy has arisen between Plaintiff and Defendant in that Plaintiff contends that she has paid THE BILLS, and THE COUNTY, despite cashing the checks, continues to contend that THE PAYMENTS were never made. [¶] . . . Plaintiff further alleges that an actual controversy has arisen between Plaintiff and Defendant in that THE COUNTY contends that the lien on the Plaintiff's property was properly placed and does not need to be withdrawn. Plaintiff disputes this." Nothing could so clearly show that this is nothing more than an attempt to circumvent the established statutory scheme mandated by the Legislature. (§ 5096 et seq.) A refund action "is available whenever taxes have been paid more than once; erroneously or illegally collected; illegally assessed or levied." (2 Callaghan, Taxing Cal. Property (3d ed. 2003) Judicial Review of Assessments, § 30.02, p. 8.) Before pursuing judicial relief, respondent was required to pay the taxes and file a claim for refund with the Board of Supervisors pursuant to section 5141.

Instead, she bypassed the administrative procedure to use a declaratory relief action as a springboard to allege intentional torts of defamation and abuse of process.

■ From an examination of the whole record, the evidence establishes the present matter is a dispute over whether there are any real property taxes owed by respondent. Such disputes must be resolved by the prescribed constitutional and statutory remedies. Respondent failed to exhaust her administrative remedies and did not pay the amount of taxes with penalties alleged by the county to be owed. Accordingly, the trial court's grant of summary judgment in favor of the County was not an error of law. As a matter of law, the trial court is without jurisdiction to proceed where an administrative remedy is mandated by law. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942], quoting and citing with approval *Gorham Mfg. Co. v. State Tax Com.* (1924) 266 U.S. 265, 269 [69 L.Ed. 279, 45 S.Ct. 80] ["A taxpayer who does not exhaust the remedies provided before an administrative board to secure the correct assessment of a tax cannot thereafter be heard by a judicial tribunal to assert its invalidity"].) The trial court "got it right" when it granted the County's motion for summary judgment. The motion for new trial was based on an erroneous concept of the governing legal principles and the trial court should have summarily denied it.

### III

The defamation and abuse of process causes of action allege that "Defendant's illegal reporting to the credit reporting agencies that Plaintiff did not make THE PAYMENTS when she indeed had, constituted an intentional, malicious and untruthful publication . . . [and] that THE PUBLICATION was both oral and written, and not privileged." There is no merit to these allegations. Exhibit M to respondent's declaration in opposition to the County's motion for summary judgment consists of the credit agency's reports. They only contain references to the County's liens on her property which are a matter of public record. There is no evidence that any County representative communicated directly to any credit reporting agency anything about its claim against respondent for taxes and penalties. The recording of a tax lien is not defamatory per se.

Respondent also contends that the County's refusal to remove the recorded lien pertaining to tax bill No. 98-0450207 is an abuse of process. Her argument is based on her attorney's declaration that "the County representative advised . . . that no money was owing on that lien." She argues that the amount owing on the pre-offset debt notification letter for that tax bill showed the amount owing as $60.88 and she paid it with her November 30, 1999 check. The

County explains the lien was not released because at the time it received the check for $60.88, the amount of taxes and accrued penalties then owed on that bill was $70.84, leaving a balance of $9.95 owing. County Tax Collector Doss declared that "In our system, bills with balances of amounts owed under $10, because of the fact that a partial payment was made, will still generate a Certificate of Tax Lien." In other words, the County does not make an effort to collect small sums beyond recording a lien. Section 2611.4 provides: "Any county department, officer or employee may refrain from collecting any tax, assessment, penalty . . . owing to the county where the amount to be collected is twenty dollars ($20) or less. Nothing in this section shall be construed as releasing any person from the payment of any tax, assessment, [or] penalty . . . which is due and owing to the county." Even if a county representative had advised that nothing was owing on tax bill No. 98-0450207, it would not vitiate the obligation to pay the tax if the county can substantiate it.[9]

Moreover, respondent's causes of action for defamation and abuse of process are barred by Government Code section 860.2. "Neither a public entity nor a public employee is liable for an injury caused by: [¶] (a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax . . . .." Respondent argues immunity does not apply because the defamation claim arises from the "County's knowingly reporting of invalid liens to credit reporting agencies and from refusing to remove liens after cashing the checks for the very amounts of said liens."

 It is of no consequence that the County acted intentionally or otherwise. The County may lawfully record liens to collect taxes it concludes are owed. Such liens are matters of public record and respondent cannot overcome the immunity conferred on the County. Immunity statutes insulate public entities from liability even where their conduct would otherwise impose liability on a private entity. The County's conduct, assessing and collecting a claim for real property taxes according to the established legislative scheme, falls squarely within Government Code section 860.2. (*Mitchell v. Franchise Tax Board* (1986) 183 Cal.App.3d 1133, 1136 [228 Cal.Rptr. 750].)

---

[9] Upon receiving respondent's check for "$60.89 [*sic*]," the tax collector cashed it and reported the "$9.95" as "PS Petty Shortages" and showed "Change $.00."

## DISPOSITION

The judgment is reversed and the case remanded to the trial court with instructions to vacate its order granting a new trial and to reinstate and enter the summary judgment in favor of the County. The County to recover costs on appeal.

Epstein, J., and Hastings, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 24, 2004.