Filed 3/17/25  Polk v. Franchise Tax Board CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JANELLE R. POLK,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FRANCHISE TAX BOARD,<br><br>Defendant and Respondent. | B331399<br><br>Los Angeles County<br>Super. Ct. No. 22BBCV00511 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Margaret L. Oldendorf, Judge.  Affirmed.

Janelle R. Polk, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Lisa W. Chao and Douglas J. Beteta, Deputy Attorneys General, for Defendant and Respondent.

_____

Plaintiff Janelle R. Polk appeals summary judgment entered in favor of defendant Franchise Tax Board (FTB) in this action for a tax refund for the years 2015, 2016, and 2018 (together, the relevant tax years).  We affirm.

## BACKGROUND

In each of the relevant tax years, plaintiff lived and was employed in California.  In 2015, she earned a combined $105,430 from Warner Bros. Entertainment, Inc. and New Line Productions, Inc.  In 2016, she earned about $110,000 from New Line Productions, Inc.  She also received distributions reported on Internal Revenue Service forms 1099-R exceeding $20,000.  In 2018, she earned about $215,245 from WB Studio Enterprises, Inc.  Each of her employers withheld state taxes from her paychecks, and all these income sources reported her income to the state.

Despite receiving this income, plaintiff failed to fully report it on her state income tax returns.  She reported no tax liability for any of the relevant tax years and claimed a refund for all amounts of state income tax withheld.

FTB disagreed with plaintiff's calculation of her income tax liability for each of the relevant tax years.  In April 2022, it mailed a notice of proposed assessment (NPA) to plaintiff proposing a $10,846.41 additional tax, penalty and interest assessment for the 2015 tax year.  Plaintiff did not protest the assessment.  Accordingly, in August 2022 FTB mailed a state income tax balance due notice (tax due notice) adopting the tax and penalty amounts stated in the NPA and reflecting a balance due of $1,151.21 in taxes, including a delinquency penalty, and interest owed for the 2015 tax year.

In January 2021, FTB mailed an NPA to plaintiff proposing a $6,558.38 additional tax, penalty and interest assessment for the 2016 tax year.  Plaintiff responded to this one.  Following a protest and appeal process, FTB issued a tax due notice in May 2022 adopting the tax and penalty amounts stated in the NPA and reflecting a balance due of $6,823.39 in taxes, including a delinquency penalty, and interest owed for the 2016 tax year.

In June 2022, FTB mailed an NPA to plaintiff proposing a $28,137.98 additional tax, penalty and interest assessment for the 2018 tax year.  Plaintiff did not protest the assessment by the deadline stated in the NPA.  Accordingly, in September 2022 FTB mailed a tax due notice adopting the tax and penalty amounts stated in the NPA and reflecting a balance due of $28,441.56 in taxes, including a delinquency penalty, and interest owed for the 2018 tax year.

Each NPA and tax due notice was mailed to plaintiff at an address on Screenland Drive in Burbank, which was plaintiff's address last known to FTB.

In July 2022, plaintiff filed a complaint to recover the amounts withheld from her wages for the relevant tax years.  FTB filed a motion for summary judgment on a single ground: that plaintiff's causes of action were barred by article XIII, section 32 of the California Constitution (section 32).  Section 32, known as the "pay first, litigate later" rule, provides that an action challenging the legality of a tax may be maintained only after payment of the tax amount due.  Thus, to prevail, FTB had to establish that there were outstanding tax amounts due for the relevant tax years.

FTB's motion was supported by two declarations, one by an FTB employee, Jarrod Reiser, and the other by FTB's counsel, Douglas Beteta.

Mr. Reiser's declaration attached the NPA and tax due notice as to each of the relevant tax years, along with records relating to plaintiff's protest and appeal of the 2016 tax year assessment, and Mr. Reiser offered testimony to authenticate them. Mr. Reiser further attested that plaintiff owed $1,169.71 for the 2015 tax year; $6,990.27 for the 2016 tax year; and, in paragraph 16 of his declaration, $27,444.76 "for the 2016 tax year." As discussed further below, Mr. Reiser meant to have said the $27,444.76 was owed "for the 2018 tax year."

Mr. Beteta's declaration attached excerpts of responses plaintiff had provided to FTB's requests for admissions on February 6, 2023, and Mr. Beteta offered testimony to authenticate them. The excerpts show FTB requested that plaintiff admit, among other things, that she "ha[d] not paid . . . $13,495 in California income taxes and penalties for the 2015 tax year" (request No. 5); "ha[d] not paid . . . $10,216 in California income taxes and penalties . . . for the 2016 tax year" (request No. 7); and "ha[d] not paid . . . $25,116 in California income taxes and penalties for the 2018 tax year" (request No. 9). For each of the relevant tax years, FTB also asked plaintiff to admit she had not paid a delinquent return penalty (requests Nos. 6, 8 & 10). Plaintiff responded to all of the foregoing requests for admission, in relevant part, as follows: "[Plaintiff] has not paid any amounts referenced in requests #5-11, but objects to any implication that [plaintiff] concedes that any such amounts of tax or penalties are (or ever were) due and payable."

4

Plaintiff opposed FTB's motion for summary judgment on the sole ground that FTB failed to meet its evidentiary burden as the moving party. Plaintiff asserted she "disputed" FTB's facts, but she did not submit any evidence in opposition to FTB's motion. Notably, plaintiff did not submit evidence she had made any payment pursuant to the tax due notices; that she did not receive the notices; that the address to which the notices were sent was not her address at the time of sending; or that she had provided FTB an updated address prior to when the notices were sent.

Plaintiff mostly opposed FTB's motion by objecting to FTB's evidence. Among other things, she objected to the relevance of the various notices attached to Mr. Reiser's declaration, including the NPA's and tax due notices, and to Mr. Reiser's testimony about the mailing of those notices. She made no objection to Mr. Beteta's declaration or the attached documents he authenticated.

Plaintiff also argued there was no factual support for FTB's claimed undisputed material fact that she owed $27,444.76 for the 2018 tax year. She noted that, even though the statement referred to the 2018 tax year, paragraph 16 of Mr. Reiser's declaration cited in the statement referred to a balance for the 2016 tax year.

Six days before the hearing date, FTB submitted a supplemental declaration of Mr. Reiser. In it, he explained the paragraph 16 reference to the "2016 tax year" was intended to say " 'the *2018* tax year.' " This was already apparent from the context of the February 2023 declaration, as the stated amount due roughly corresponded to the amount shown on the attached tax due notice for the 2018 tax year described in the sentence

immediately preceding, and Mr. Reiser had already attested to the amount due for the 2016 tax year. Moreover, FTB's separate statement filed with its summary judgment motion recited that plaintiff owed $27,444.76 for the *2018* tax year based on paragraph 16 of Mr. Reiser's declaration.

At the hearing on the motion, plaintiff attempted to object to Mr. Reiser's reply declaration on the grounds that it was untimely. The trial court did not rule on her objection, explaining it was "not considering" the reply declaration. In the trial court's order granting FTB summary judgment, however, the trial court cited the reply declaration's correction to establish plaintiff's outstanding balance for the 2018 tax year. As to the other two tax years, the trial court found plaintiff had admitted "she ha[d] not fully paid the balance due."

Plaintiff timely appealed the judgment against her.

## DISCUSSION

### 1. Summary Judgment Law and Standard of Review

On a motion for summary judgment, a defendant must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate only "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id*., subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute

6

was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.) It is no longer called a "disfavored" remedy. (*Ibid*.) "Summary judgment is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Ibid*.)

" 'We independently review an order granting summary judgment. [Citation.] We determine whether the court's ruling was correct, not its reasons or rationale. [Citation.] "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." [Citation.]' [Citation.] In performing our de novo review, we view the evidence in the light most favorable to . . . the party opposing summary judgment." (*Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 913.)

" 'We examine the evidence and independently determine its effect. [Citation.] We must uphold the judgment if it is correct on any ground, regardless of the reasons the trial court gave.' " (*Windsor Food Quality Co., Ltd. v. Underwriters of Lloyds of London* (2015) 234 Cal.App.4th 1178, 1184.)

2.      **Analysis**

" 'A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax. This rule, commonly known as "pay first, litigate later," is well established and is based on a public policy reflected in the state Constitution, several statutes, and numerous court opinions.' [Citation.] Section 32 provides: 'No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After

payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature.'  This constitutional provision establishes that 'the sole legal avenue for resolving tax disputes is a postpayment refund action.  A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid.' "  (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)

A defendant in a tax refund action is entitled to summary judgment where the undisputed material facts show the plaintiff has not fully satisfied the tax obligations she challenges.  (*Rickley v. County of Los Angeles* (2004) 114 Cal.App.4th 1002, 1015 (*Rickley*).)  The only question we must resolve on this appeal is, therefore, whether FTB's properly admitted evidence was sufficient to show plaintiff had not paid all amounts FTB asserted she owed for each of the relevant tax years before attempting to obtain a refund for amounts her employers withheld for those tax years.  We conclude it was.

As detailed below, FTB's evidence showed it mailed the tax due notices, which included assessments for delinquency penalties, to plaintiff's last known address, thereby causing the assessments to become due and payable 15 days later.  (Rev. & Tax. Code, § 19049, subd. (a).)  Plaintiff admitted not having paid any amount on account of delinquency penalties for any of the relevant tax years.  Accordingly, her action is barred by the pay first, litigate later rule.  (*Rickley*, *supra*, 114 Cal.App.4th at pp. 1012-1014.)

8

### a. FTB's properly admitted evidence established asserted tax liabilities, including delinquency penalties, for the relevant tax years.

Every person who meets the minimum filing requirements is required to file a state income tax return, report income, and pay any tax due to FTB. (Rev. & Tax. Code, § 18501.) FTB then examines the return to determine the correct amount of the tax. (§ 19032.) If FTB "determines that the tax disclosed by the taxpayer . . . is less than the tax disclosed by its examination, it shall mail notice to the taxpayer of the deficiency proposed to be assessed." (§ 19033, subd. (a).)

A taxpayer can protest the proposed deficiency assessment within 60 days after it is mailed. (Rev. & Tax. Code, § 19041.) "If no protest is filed, the amount of the proposed deficiency assessment becomes final" after 60 days. (§ 19042.) If a protest is filed, finality is delayed until the protest is resolved. (See §§ 19044, 19045, 19047, 19048.) After the assessment becomes final, FTB must mail notice and demand payment for the assessment to become due and payable. (§ 19049, subd. (a).) The assessment becomes due and payable 15 days from the date of notice and demand. (*Ibid.*)

For these reasons, notwithstanding plaintiff's contentions to the contrary, the NPA's and tax due notices FTB put into evidence were plainly relevant to establishing plaintiff had unpaid asserted tax liabilities for the relevant tax years. When mailed, the tax due notices made the asserted amounts due and payable 15 days thereafter. This is true whether or not plaintiff agreed with the assessments.

Plaintiff concedes Mr. Reiser properly authenticated the tax due notices. But she argues his declaration is inadequate to

9

establish they were mailed to her last known address. We disagree.

Preliminarily, we find frivolous any suggestion the record fails to show the Screenland Drive in Burbank address to which all notices were sent was plaintiff's address last known to FTB. In addition to Mr. Reiser's testimony, other documents in the record show plaintiff received notices at the Screenland Drive address. She attached notices mailed there in relation to her July 2021 administrative appeal relating to the 2016 tax year, she used the address in communicating with FTB regarding the same July 2021 administrative appeal[1], and it is the same address plaintiff used in this lawsuit, beginning with her complaint.

Mr. Reiser testified that notices addressed to the Screenland Drive address were actually mailed there, after verification that it was her last known address, based upon his knowledge of FTB's mailing practices. Evidence of customary mailing practices is admissible to prove mailing on a specific instance. For example, in *Kiernan v. Union Bank* (1976) 55 Cal.App.3d 111 (*Kiernan*), testimony of a bank officer that "it was the unvarying practice of [the bank] to mail to each customer with a commercial checking account a monthly statement listing all checks paid on that account since the previous statement, together with all cancelled checks, by the third business day of each month" was sufficient to support summary judgment in the bank's favor where mailing was a material fact. (*Id.* at p. 116.)

---

[1] Plaintiff objected to admission of this document on relevance grounds only and the trial court overruled her objection. We find the document relevant.

10

Here, Mr. Reiser's testimony was akin to the bank officer's testimony in *Kiernan*. Mr. Reiser testified that he located the tax due notices in FTB's archives. He further testified that notices are placed in FTB archives only after they are mailed, and the mailing process for notices is as follows: "FTB staff first verifies a taxpayer's last known address, prints the notice, places it in a sealed envelope, and then places the envelope in an outgoing mail bin. The bin is taken to a mail room from where a post office employee picks it up." We reject plaintiff's attempts to distinguish *Kiernan*, including on "the most crucial difference . . . that the *Kiernan* case did not involve a motion for summary judgment." In fact, it did. (*Kiernan*, *supra*, 55 Cal.App.3d at p. 114.)

Plaintiff responds that Mr. Reiser's testimony does not amount to personal knowledge of mailing and leaves unanswered the questions of who followed FTB's mailing procedures and who actually mailed the letter. "Testimony that an act occurred, based on the witness' knowledge that the performance of that act is part of an invariable and long-continued business custom or habit, is treated as though the performance of the act itself is within the personal knowledge of the witness." (*Kiernan*, *supra*, 55 Cal.App.3d at p. 116.) There is no requirement that mailing may be proved only by testimony of those persons who actually effected it. (*Jenkins v. Tuneup Masters* (1987) 190 Cal.App.3d 1, 11 [rejecting contention that "evidence of mailing based upon habit and custom must be supported by testimony from all of the employees in the chain of custody coupled with proof of compliance with that custom on the occasion in question"].)

The trial court did not err in admitting the tax due notices and admitting Mr. Reiser's testimony that they were mailed to

11

plaintiff's address on Screenland Drive in Burbank after confirmation that such address was the address for plaintiff last known to FTB.

Plaintiff attempts to show that the tax due notice for the 2015 tax year cannot subject her to tax liability because it was untimely under Revenue and Taxation Code section 13516 and reflects that it was determined without reviewing her return in violation of *Wertin v. Franchise Tax Bd.* (1998) 68 Cal.App.4th 961. However, she relies solely on her own allegations as the factual predicates for these arguments. "A party opposing summary judgment may not 'rely upon the allegations or denials of its pleadings' but must set forth 'specific facts' beyond the pleadings to show the existence of a triable issue of material fact. ([Code Civ. Proc.,] § 437c, subd. (p)(2).)" (*Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 318.) Moreover, plaintiff's arguments, like her entire refund action claiming no state tax liability for any of the relevant tax years, go to the validity of the assessment, and she fails to explain how such arguments are exempt from the pay first, litigate later rule.

> **b.    FTB's properly admitted evidence established plaintiff had not fully satisfied the assessments against her, including delinquency penalties, before bringing her refund action.**

Plaintiff's responses to FTB's requests for admissions establish she filed this lawsuit without having satisfied all asserted liabilities for taxes and associated penalties.

Plaintiff argues that when she acknowledged in response to FTB's requests for admissions that she did not pay "any amounts referenced in requests #5-11," she was admitting only that she did not pay the specific dollar amounts in the requests for admissions Nos. 5, 7 and 9. However, plaintiff did not offer any

12

evidence that she had paid the full amount of the assessments FTB made against her. The exact amounts of her payments and the exact amounts of the asserted tax balance are immaterial. FTB was entitled to summary judgment because plaintiff did not dispute there was *some* outstanding asserted balance.

In the same responses to requests for admissions Nos. 5 through 11, plaintiff also admitted she "ha[d] not paid any amounts" for "a delinquent return penalty for the 2015 tax year" (request No. 6); for "a delinquent return penalty for the 2016 tax year" (request No. 8); or for "a delinquent return penalty for the 2018 tax year" (request No. 10). A delinquent return penalty was asserted as due in the tax due notice for each of the relevant tax years, and plaintiff's admission that she did not pay any delinquent return penalties is an admission she had not satisfied all asserted amounts and therefore did not comply with the pay first, litigate later rule. (See *Rickley*, *supra*, 114 Cal.App.4th at pp. 1012-1014 [unpaid tax delinquency penalty sufficient to support application of § 32].)

## DISPOSITION

The judgment of the trial court is affirmed. FTB is to recover its costs on appeal.


GRIMES, Acting P. J.

WE CONCUR:

WILEY, J.


VIRAMONTES, J.

13