54 Cal.Rptr.3d 379 (2007)
147 Cal.App.4th 475
Scott JONES, Plaintiff and Appellant,
v.
The LODGE AT TORREY PINES PARTNERSHIP et al., Defendants and Respondents.
No. D046600.
Court of Appeal of California, Fourth District, Division One.
February 5, 2007.
As Modified February 8, 2007.
*384 Toothacre & Toothacre LLP, Scott H. Toothacre and Bod M. Toothacre for Plaintiff and Appellant.
Horvitz & Levy LLP, Barry R. Levy and Nina E. Scholtz, Encino; Wilson, Petty, Kosmo & Turner LLP, Regina A. Petty, Michael S. Kali, and Jessica A. Chasin, San Diego, for Defendants and Respondents.
BENKE, J.
Plaintiff Scott Jones went to trial against defendants The Lodge at Torrey Pines Partnership (The Lodge) and Jean Weiss (collectively defendants) on causes of action under the California Fair Employment and Housing Act (FEHA) (Gov. Code,[1] § 12900 et seq.) for sexual orientation discrimination against The Lodge and retaliation against The Lodge and Weiss. After entering judgment on a verdict awarding Jones $1,395,000 against The Lodge and $155,000 against Weiss, the court granted defendants' motions for judgment notwithstanding the verdict (JNOV) and, alternatively, a new trial. Jones appeals the JNOV and order granting a new trial, contending (1) the court applied an incorrect standard for adverse employment action under FEHA in granting defendants' motions for JNOV and new trial; (2) the court abused its discretion in granting a new trial on the ground of excessive damages; and (3) the court erred in granting JNOV in favor of Weiss on the ground a supervisor cannot 
be held liable for retaliation under FEHA. Additionally, Jones seeks review of the following contentions only if we affirm the order granting a new trial: (1) the court prejudicially erred by excluding evidence of lost wages in the absence of a constructive discharge; (2) the court erred in hearing The Lodge's motion for summary judgment/adjudication on the merits after summarily denying the motion based on The Lodge's failure to appear at the initial hearing on the motion; and (3) the court erred in granting The Lodge's motion for summary adjudication as to Jones's causes of action for constructive discharge, sexual orientation harassment, breach of implied contract to terminate employment only for good cause, and intentional infliction of emotional distress, and as to his claim for punitive damages.
Defendants move to dismiss Jones's appeal from the new trial order on the ground it was not identified in Jones's notice of appeal. Defendants filed a protective cross-appeal from the original judgment, contending the court prejudicially erred by (1) refusing their proposed jury instruction on the meaning of. "adverse employment action;" and (2) admitting highly inflammatory, irrelevant evidence that Weiss and another employee made sexual comments about women and Jones complained about offensive conduct to The Lodge. We deny defendants' motion to dismiss Jones's appeal from the order granting a new trial. We reverse the order granting the motions for JNOV and a new trial and reinstate and affirm the original judgment.

FACTUAL AND PROCEDURAL BACKGROUND
The Lodge is a partnership that was formed in 1995 to develop, own, and operate The Lodge at Torrey Pines Hotel in *385 La Jolla, California. The Lodge is affiliated with the Evans Hotel Corporation (Evans Hotels), which owns or is involved in the operation of a number of hotels, including The Lodge at Torrey Pines, the Catamaran Hotel and the Bahia Hotel in San Diego.[2] The Lodge purchased Torrey Pines Inn, a hotel and restaurant adjacent to Torrey Pines Golf Course. The Lodge changed the name of the hotel to The Lodge at Torrey Pines (LTP) and operated the restaurant as "The Grill."
Jones began working as a cashier/host at the restaurant in the Catamaran Hotel in 1994. In 1995 he was promoted to a supervisory position at The Grill, and in 1997 he became manager of The Grill and completed a corporate management training program offered by Evans Hotels. In 2000 he was promoted to the position of outlet manager at LTP. As outlet manager, Jones was responsible for the restaurant, bar, catering and banquet events, and the beverage cart service to golfers on the golf course.
In 2000 The Lodge began major reconstruction of LTP with the goal of creating a five diamond hotel. The Grill remained open during the reconstruction even though the hotel was being demolished around it. In October 2000 The Lodge hired Weiss as LTP's food and beverage director. At that time Jones was in charge of The Grill and Ken Mullen was the chef in charge of the kitchen. Weiss and hotel manager Robert Arjona promised Jones the position of assistant food and beverage director when the new hotel opened. Arjona told Jones his salary could double.
At trial Jones testified Weiss and kitchen manager Jerry Steen developed "a special bond of joke telling" that involved daily jokes and sexual remarks about women employees and Jones. Weiss used the words "fucking," "tits," "bitch," "cocksucker," and "faggot" in jokes that Jones found highly offensive and degrading. In connection with a banquet function, Weiss said people like Jones are better at decorating and Jones "should be good at this kind of stuff." When Jones was not present, Steen and Weiss said Jones had "to go home to fuck [his] bitch" or "[his] bitch needs [him] at home." Weiss and Steen directed graphic "gay-bashing jokes" at Jones, and they kept written copies of the jokes in the bar next to The Grill. During a lunch rush, Steen showed Jones a pornographic photograph involving three nude transsexuals and asked, "Do you know what this is?"[3]
Several female employees who worked in LTP's cart department and were known as "cart girls" complained to Jones that they felt uncomfortable around Weiss and Steen, particularly Weiss. The cart girls told Jones that Steen used offensive language, *386 including calling them "bitch," and that Weiss leered at them. Early in 2001 Jones complained to Weiss that Steen was aggressive and unprofessional in the work place toward women. In February or March Weiss threatened to fire Jones if he "aired any dirty laundry"i.e., spoke to the Human Resources (HR) Department about anything that happened at the food and beverage department of LTP.
In May 2001 Jones sent Weiss an interoffice memorandum, stating: "Please refrain from your unprofessional remarks." Jones testified that his reference to "unprofessional remarks" included gay-bashing jokes and jokes about women. Weiss responded by bringing Jones into his (Jones's) office and ordering everyone else out, locking the door, sitting Jones down in 'a* corner, and delivering a tirade, after which he crumpled up Jones's memorandum and threw it at him. Jones felt physically intimidated by Weiss.
On June 4, 2001, Steen was promoted to the newly created position of food and beverage operations manager for The Grill and LTP's golf course operations. On June 6 cart girl Jayme Miller told Jones she wanted to lodge a written complaint about the gay-bashing jokes she had heard Weiss and Steen tell about Jones and his partner. The next day, Jones met with Jim Fulks, the HR director for Evans Hotels. During the meeting, which lasted over two hours, Jones complained about sexual orientation discrimination and harassment at LTP and about the sexual harassment of his female coworkers. He also told Fulks about the vulgar language Weiss and Steen used in the workplace and that Miller would be filing a written complaint. He became very emotionally upset and expressed the need to see a therapist for counseling. Fulks told Jones he (Jones) would have to ask Weiss's permission to seek counseling and suggested he quit his job because "things like this get worse." Fulks thought Jones was too upset to work, so he directed him to call Weiss and tell him he would not be able to come to work that day.
When Jones returned to work the next day, he received an "Employee Warning Notice" for absenteeism from Weiss, stating: "You did not follow Evans Hotels' policy by failing to notify your manager at least two hours before your starting time. You called at 11:31 a.m. You were scheduled for 12:00 noon." Jones had never received a written employee warning notice before. He immediately called Fulks and asked why he had been written up. Fulks said, "That's the policy."
On June 16, 2001, Miller had a friend deliver a letter to Fulks. In that letter Miller complained about Weiss's and Steen's treatment of Jones and expressed her view that they were blackballing Jones. Fulks met with Miller shortly after receiving the letter, and Miller elaborated on the gay-bashing comments that Weiss and Steen made against Jones. Miller testified that when Fulks later asked her if things were going better at LTP, she answered "yes" because she "had given up on trying to get anything fixed in the environment."
In a memorandum dated June 11 and signed by Weiss on June 18, Weiss summarized various concerns about Jones's performance as a manager. Weiss had never "written anybody up," so Fulks gave him the format he should use to document his dissatisfaction with Jones's work performance. Weiss's memorandum discussed Jones's unsatisfactory performance in the following areas: (1) training of "front-of-the-house personnel;" (2) preparation of weekly bar inventory reports; (3) improvement of uniform standards at The Grill and the Cart Department; (4) cleanliness of The Grill, the bar and the carts; *387 (5) safety training; (6) on-counter and back-of-counter presentation at The Grill; and (7) general follow-up to Weiss's instructions and suggestions. The memorandum directed Jones to correct these performance issues within 30 days and stated: "This serious breach of the expected management philosophy and conduct can no longer remain in a cycle of shortterm improvement. It must be our longterm commitment, for both of us, to change your behavior for the long term." The memorandum warned that "recurring performance problems may require further disciplinary action, which could lead to suspension and/or termination of employment at Evans Hotels."
Jones received a memorandum dated June 15, 2001, requesting him to meet with Weiss and Fulks on June 18 at the HR Department in the Bahia Hotel. Jones was happy when he received the memorandum because he thought something was finally going to be done about the issues he raised in his meeting with Fulks. However, when he arrived at the meeting, Fulks gave him Weiss's June 11 memorandum and made it clear they would only discuss the work performance issues raised in that document. Jones was shocked to receive the memorandum, which he viewed as a "30-day notice for poor work performance"i.e., a 30-day notice to comply with the directives of the memorandum or be terminated. Fulks told him they would meet after 30 days to discuss his progress. Although Jones testified he "did not believe a single word on this memorandum," he did not prepare a written response.
After Jones's June 18 meeting with Weiss and Fulks, Weiss stopped talking to Jones and excluded him from weekly LTP management meetings, which he formerly had attended. On June 19 Weiss and Steen continued to use offensive language in the work place and Jones overheard Steen threaten to "punch the faggot in the mouth." Jones complained to Fulks about Steen's threat. Fulks said he would talk to Weiss, but Jones never heard back from Fulks on the matter.
On July 19, 2001, Jones's doctor put him on disability leave until August 13 for "on-the-job harassment." Jones's doctor later extended the leave to September 5. While Jones was on leave, Fulks instructed Dan Ferbal, the corporate director of training for Evans Hotels, to take Jones out to lunch to see how he was doing and to discuss his return to work. At Fulks's request, Ferbal proposed Jones transfer from his management position at LTP to a supervisory position at the Catamaran. Jones told Ferbal he wanted to return to his job at LTP and would not take a demotion.
When Jones's disability leave expired, Fulks placed him on paid administrative leave because the issue of where he would return to work was still unresolved. Fulks and Bill Evans, who was managing director of Evans Hotels and a general partner of The Lodge, tried to persuade Jones to take a position at the Catamaran, but Jones adamantly refused to transfer from his position at LTP. Jones later met with Fulks and Dan Fullen, the general manager of LTP. They told him he could return to LTP but he would have to take care of the performance issues raised by Weiss. Jones testified they told him he was still on his 30-day probation and that the way he suddenly went on disability leave had "burn[ed] a bridge" with LTP's management. Jones also testified that when he mentioned he had met with somebody in the Department of Fair Employment and Housing (DFEH), Fulks accused him of "blackmailing" the hotel and offered him *388 $10,000 to drop his DFEH case.[4] On September 25 DFEH sent Fulks a "Notice of Filing of Discrimination Complaint" and a copy of the complaint Jones had filed with DFEH the day before.
On September 2:8 Jones returned to work at LTP as manager of The Grill. He continued to be excluded from meetings and Mullen advised him to watch his back because Weiss was "looking out to get dirt on [him]." His assistant manager, George Ekita, had given him a similar warning back in February or March. Mullen testified that during a meeting sometime in the fall of 2001, Weiss said: "We've got to get Scott Jones out of here."
In October Jones filed an amended DFEH complaint. In November he was excluded from a "coordination meeting" of Evans Hotels management employees regarding the upcoming Buick Invitational golf tournament. He had previously been included in Buick Invitational coordination meetings and his assistant was included in the November 2001 meeting. When Jones asked Fulks why he was excluded from the meeting and his assistant was allowed to attend, Fulks replied: "Because that's what you wanted. That's who [Weiss] is working with."
In December 2001 The Lodge terminated Steen's employment. Steen was told he was being terminated for his harsh management style. Fulks testified in deposition that Steen "was terminated for a repeat incident of using vulgar language and a lack of respect for his co-workers."
On December 28 Weiss issued an employee warning notice to Jones for missing work the previous day without notifying his manager. In a written response to the notice, Jones stated: "On Wednesday, 12/26/01, I called Ken Mullen and told him that I would be absent on Thursday 12/27/01. In the past [we] never had to call Jean Weiss ... to report our [absences]. We always reported to the `on call Manager.'"
On January 5, 2002, Weiss issued another employee warning notice against Jones stating: "On January 1, 2002, you failed to lock up and secure the keys for [T]he Grill cash register and those of the bar. You left the bar keys on the back counter; the cash register keys were left in the accessible drawer of the register. This is in violation of standard operating procedures." Jones's written response stated: "Where is this `standard operating procedure] written? The Grill keys are always kept unlocked. This was never a problem before."
On January 6 Weiss issued an employee warning notice against Jones, stating: "On Friday, January 4, 2002, you failed to take the scheduled weekly bar inventory. This is in violation of our standard operating procedures." Jones responded in writing: "The inventory always needed to be done on the week-end, not on Fridays[,] and ready for you on Monday, and you did get them then."
On January 17 Weiss issued another employee warning notice against Jones for a number of errors in a banquet bill form used by The Lodge, including failing to charge a cart rental fee, failure to charge sales tax at the then-prevailing rate, and including the sales tax in the food gratuity portion of the service charge, resulting in an overpayment. Weiss wrote: "[I]t is my opinion these mistakes are a result of carelessness and not a training issue. Such substandard work cannot be tolerated and any recurring performance problems may require further disciplinary action." Jones did not respond to this notice because he was "fed up."
*389 On January 22, 2002, Jones submitted a letter of resignation, giving two weeks' notice. On January 24 Fulks hand-delivered Jones's final paycheck and a letter responding to Jones's resignation letter, telling Jones it was "time to go home" because his service was no longer needed. In his letter, Fulks referred to Jones's "performance issues" and stated, in part: "Despite [management's] efforts and attempts to assist you to improve your work performance, I believe you have made the best decision for yourself. [¶] I am sure you are aware that your departure is extremely untimely. This is due to the staffing and operational challenges we face each year with the Buick Invitational Golf Tournament, but in the best interest of all concerned, we have decided to pay you for the two weeks notice you have given us." Fulks concluded with the statement: "I feel compelled to reiterate that your reasons and circumstances for leaving the Company should not be shared with other staff members of Evans Hotels in the interest of maintaining your confidentiality."
On January 25 Ferbal documented a conversation he had that day with Jones. Jones told Ferbal he was glad to be out of LTP and that he had "had it" with the extreme harassment he had endured from Weiss. Ferbal reported: "[Jones] was extremely upset with the warnings he had just received over the past few weeks. Stupid stuff." Jones told Ferbal that he had thoroughly enjoyed working for Evans Hotels, but he was sick of the abuse and wanted to feel better, and that he was worried about his health, which was his first priority.
In May 2003 Jones filed the instant action against Weiss, Steen and Evans Hotels. Jones later filed a first amended complaint, which asserted causes of action for wrongful constructive discharge in violation of public policy; sexual orientation harassment in violation of section 12940, subdivision (j)(l); sexual orientation discrimination; retaliation in violation of section 12940, subdivision (h); breach of implied contract for continued employment; and intentional infliction of emotional distress. The court sustained Weiss and Steen's demurrer to the fourth cause of action for retaliation with leave to amend. The Lodge filed an answer to the first amended complaint as "The Lodge at Torrey Pines Partnership erroneously sued as Evans Hotels Corporation."
On January 30, 2004, The Lodge, Weiss and Steen filed motions for summary judgment and summary adjudication even though Weiss and Steen's demurrer had been sustained with leave to amend and Jones had not yet filed a second amended complaint.[5] On February 20 Jones filed his second amended complaint, adding The Lodge and its general partners as named defendants and revising the fourth cause of action for retaliation. Weiss and Evans Hotels filed demurrers to the second amended complaint, which the court overruled.[6] As noted, The Lodge moved to quash service of summons of the second amended complaint. (See ante, fn. 2.) The court denied the motion to quash as to The Lodge, but granted the motion as to The Lodge's general partners.
Evans Hotels filed a "supplemental" motion for summary judgment or, alternatively, summary adjudication to address *390 Jones's new claim in the second amended complaint that Evans Hotels was the alter ego of The Lodge. Weiss and Steen also filed additional motions seeking summary adjudication of Jones's revised fourth cause of action for retaliation.[7] The court issued a tentative ruling granting The Lodge's motion for summary adjudication as to Jones's first cause of action for constructive discharge, second cause of action for sexual orientation harassment, and fifth cause of action for breach of implied contract of continued employment. The court tentatively denied The Lodge's motion for summary adjudication as to the third cause of action for sexual orientation discrimination, the fourth cause of action for retaliation, and Jones's claim for punitive damages. The court tentatively granted Weiss's motion for summary judgment on the ground Jones failed to present admissible evidence of harassment by Weiss that was sufficiently severe and pervasive to alter the conditions of his employment. However, the court tentatively denied Steen's motion for summary judgment or, alternatively, summary adjudication, finding Jones presented sufficient evidence of severe and pervasive inappropriate homosexual comments by Steen to support a verdict in his favor.
At oral argument The Lodge took the position, in connection with its motion to quash service, that it had never generally appeared in the action. (See ante, fn. 2.) Consequently, the court summarily denied The Lodge's motion for summary judgment/adjudication on the ground it was not present at the hearing on the motion. The court took Weiss's and Steen's motions under submission.
On August 25, 2004, the court issued an order affirming its tentative decision to grant Weiss's "motion for summary judgment or, in the alternative, summary adjudication," and changing its tentative decision to deny Steen's "motion for summary judgment."[8] The court summarily adjudicated Jones's causes of action for sexual orientation harassment and intentional infliction of emotional distress in favor of both Weiss and Steen on the ground Jones failed to present admissible evidence of harassment by Weiss that was sufficiently severe and pervasive to alter the conditions of his employment and create an abusive working environment. On September 20 the court entered an order summarily adjudicating Jones's retaliation cause of action in Steen's favor, resulting in summary judgment in Steen's favor. The court also granted summary judgment in favor of Evans Hotels on the ground Jones failed to show the existence of a triable issue of fact as to his alter ego allegations. As to Weiss, however, the court denied summary judgment/adjudication of the retaliation cause of action. The court entered judgments in favor of Steen and Evans Hotels on September 30, 2004.
After the California Supreme Court denied The Lodge's petition for review of this court's denial of its petition for writ of *391 mandate challenging the trial court's denial of its motion to quash service, The Lodge filed an answer to the second amended complaint and moved to reset its summarily denied motion for summary judgment/adjudication for hearing on the merits. The court granted that motion and issued a ruling affirming its earlier tentative ruling as to the first through fifth causes of actioni.e., granting summary adjudication as to the first cause of action for constructive discharge, second cause of action for sexual orientation harassment, and fifth cause of action for breach of implied contract of continued employment, and denying summary adjudication as to the third cause of action for sexual orientation discrimination and fourth cause of action for retaliation. The court granted summary adjudication in The Lodge's favor as to the sixth cause of action for intentional infliction of emotional distress and Jones's claim for punitive damages under the remaining causes of action for sexual orientation discrimination and retaliation.
The remaining causes of action were tried to a jury, which returned a verdict in favor of Jones on both the sexual orientation discrimination cause of action against The Lodge and the retaliation cause of action against The Lodge and Weiss. The jury awarded compensatory damages of $1,395,000 against The Lodge and $155,000 against Weiss, but found Weiss was not guilty of malice or oppression in the conduct on which it based its finding of liability for retaliation. The court entered judgment on the verdict on February 28, 2005.
The Lodge and Weiss filed separate motions for JNOV and, alternatively, a new trial.[9] On April 22, 2005, the court granted the motions for JNOV, concluding Jones had to establish an adverse employment action had been taken against him to succeed on both his discrimination and retaliation causes of action and there was insufficient evidence of an adverse employment action. With respect to Weiss, the court ruled an individual cannot be liable for retaliation. The court also granted the alternative motions for new trial, finding, in accordance with its ruling on the JNOV motions, there was insufficient evidence to justify the verdict and the jury was insufficiently instructed on what constitutes an adverse employment action. As to The Lodge only, the court ordered a new trial on the additional ground of excessive damages. On May 9, 2005, the court entered a judgment in favor of The Lodge and Weiss. The April 22 order granting the motions for JNOV and new trial is referenced in and attached to the May 9 judgment.
On June 6, 2005, Jones filed a notice of appeal, stating he was appealing from "the Judgment entered on May 9, 2005 in favor of [The Lodge] and [Weiss] ... and from various interlocutory orders made on summary adjudication motions." On June 28 The Lodge and Weiss noticed their protective cross-appeal from the original judgment.

DISCUSSION

I. Defendants' Motion to Dismiss

Defendants move to dismiss what they refer to as Jones's "purported appeal (referenced in his opening brief) from the April 22, 2005, order granting The Lodge's and Weiss's motions for new trial." Alternatively, defendants move to strike all references in Jones's opening brief to an appeal from the order granting a new trial. Defendants argue that because there is no reference in the notice of appeal to the separately appealable order granting defendants' *392 motions for new trial, this court lacks jurisdiction to consider Jones's challenge to the new trial order. Defendants cite Sole Energy Co. v. Petrominerals Corp. (2005) 128 Cal.App. 4th 212, 26 Cal. Rptr.3d 798, in which the Court of Appeal concluded it lacked jurisdiction to consider the appellant's challenge to a new trial order because the appellant filed a notice of appeal identifying only the judgment notwithstanding the verdict and not an order granting a new trial. (Id. at pp. 226, 239-240, 26 Cal.Rptr.3d 798.)
Jones argues his notice of appeal should be liberally construed to include an appeal from the new trial order because that order is attached to and incorporated in the judgment. Jones also notes that his designation of the record includes all the documents related to the new trial motions.
It would be more accurate to say the new trial order is referenced in the judgment, as the judgment does not state it is incorporating the order. The judgment notwithstanding the verdict identified on Jones's notice of appeal states, in relevant part: "The judgment heretofore entered in this action on 2/28/05 [has] been vacated and set aside by order of this Court, entered on April 22, 2005 and attached hereto as Exhibit 1." (Italics added.) The April 22 order attached to the judgment is the order granting defendants' motions for JNOV and new trial.
A "notice of appeal must be liberally construed." (Cal. Rules Of Court, rule 8.100(a)(2).) Under this rule, "`the notice can be interpreted to apply to an existing appealable order or judgment, if no prejudice would accrue to the respondent. Thus, notices of appeal referring to an "order" have been interpreted to apply to a "judgment," and those referring to a "judgment" to apply to an "order," "so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced."'[ Citation.]" (Walker v. Los Angeles County Metropolitan Transportation Authority (2005) 35 Cal.4th 15, 20, 23 Cal.Rptr.3d 490, 104 P.3d 844 (Walker).) Applying this rule, Walker held that "[b]ecause `[t]he law aspires to respect substance over formalism and nomenclature' [citation], a reviewing court should construe a notice of appeal from an order denying a new trial to be an appeal from the underlying judgment when it is reasonably clear the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced." (Id. at p. 22, 23 Cal.Rptr.3d 490, 104 P.3d 844, fn. omitted; see also Vernon v. Great Western Bank (1996) 51 Cal.App.4th 1007, 1011, fn. 2, 59 Cal.Rptr.2d 350 [appeal from judgment liberally construed to be appeal from earlier dismissal order referenced in the judgment].)
Here, because the judgment identified in Jones's notice of appeal refers to the order granting a new trial and that order is attached to and, therefore, is a part of the judgment, we liberally construe Jones's notice of appeal being from the order granting a new trial as well as from the judgment. It is reasonably clear that Jones intended to appeal the order granting a new trial and there is no indication defendants have been misled or will be prejudiced by our construing the notice of appeal to include an appeal from that order. Accordingly, we deny defendants' motion to dismiss the appeal as to the order granting a new trial and alternative motion to strike all references in Jones's opening brief to an appeal from that order.

II. Jones's Request for Judicial Notice

Jones requests that we take judicial notice of a legislative history report and analysis prepared by Legislative Intent *393 Service regarding Assembly Bill No. 1856 (1999-2000 Reg. Sess.). (Stats.2000, ch. 1047.) Because the bill clarified that nonsupervisory employees can be liable for sexual harassment under FEHA, Jones contends its legislative history is relevant to the issue in this case of whether Weiss can be held personally liable on Jones's retaliation claim.
Jones's request for judicial notice is overbroad, as he seeks judicial notice of a large volume of documents reflecting the legislative history of Assembly Bill No. 1856, but does not specify any particular document. The problem with such a blanket request for judicial notice is that not all documents comprising a "legislative history" of a statutory enactment are properly subject to judicial notice. (See Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc. (2005) 133 Cal.App.4th 26, 31-39, 34 Cal.Rptr.3d 520.) Jones's failure to refer to any specific item in the legislative history of Assembly Bill No. 1856 of which judicial notice is proper and relevant deprived defendants of a "reasonable opportunity to meet" the request as required by Evidence Code section 459, subdivision (d). Therefore, we deny Jones's request for judicial notice on the ground it is overbroad. (See Wilson v. John Crane, Inc. (2000) 81 Cal.App.4th 847, 856, 97 Cal.Rptr.2d 240 [denying request for judicial notice that was "grossly overbroad"].)
Additionally, a request for judicial notice is properly denied when the materials in question are unnecessary to resolution of the appeal. JRS Products, Inc. v. Matsushita Electric Corp. of America (2004) 115 Cal.App.4th 168, 174, 8 Cal.Rptr.3d 840 [request for judicial notice of legislative history denied because language of statute was plain and consideration of legislative history was therefore unnecessary]. It is unnecessary for us to take judicial notice of the legislative history of Assembly Bill No. 1856 to resolve the issue of whether a nonsupervisory employee can be held liable for retaliation under FEHA, as we can decide that issue based on the relevant statutory language and case law interpreting that language. Accordingly, we also deny Jones's request for judicial notice on the ground it is unnecessary.

III. Grant of JNOV on the Ground There Was No Evidence of an Adverse Employment Action

"Well-settled standards govern judgments notwithstanding the verdict: When presented with a motion for JNOV, the trial court cannot weigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied.... [Citations.] A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom in support of the verdict, the motion should be denied.... [Citation.] The same standard of review applies to the appellate court in reviewing the trial court's granting of the motion. [Citations.] Accordingly, the evidence ... must be viewed in the light most favorable to the jury's verdict, resolving all conflicts and drawing all inferences in favor of that verdict.' [Citation.]" (Osborn v. Irwin Memorial Blood Bank (1992) 5 Cal. App.4th 234, 258-259, 7 Cal.Rptr.2d 101.) However, to the extent a motion for JNOV raises legal issues such as the application of law to undisputed facts or the interpretation of a statute or contract, we review the trial court's ruling on the motion de *394 novo. (See Mason v. Lake Dolores Group (2004) 117 Cal.App.4th 822, 829-830, 11 Cal.Rptr.3d 914 [when the sole issue presented on appeal from JNOV is application of a statute to facts supporting the jury's verdict, it is a question of law subject to de novo review]; Gunnell v. Metrocolor Laboratories, Inc. (2001) 92 Cal.App.4th 710, 719-720, 112 Cal.Rptr.2d 195; Trujillo v. North County Transit Dist. (1998) 63 Cal. App.4th 280, 284, 73 Cal.Rptr.2d 596.)
Under California case law, "to establish a prima facie case of retaliation under the FEHA,[[10]] a plaintiff must show (1) he or she engaged in a `protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation `"`drops out of the picture,'"' and the burden shifts back to the employee to prove intentional retaliation. [Citation.]" (Yanowitz v. L'Oreal USA, Inc. (2005) 36 Cal.4th 1028, 1042, 32 Cal. Rptr.3d 436, 116 P.3d 1123 (Yanowitz).) A plaintiff also must show he or she suffered an adverse employment action to establish a prima facie case of discrimination under FEHA. (Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 355, 100 Cal.Rptr.2d 352, 8 P.3d 1089.)[11]
Here, the court granted JNOV based on its conclusion that "the jury's verdict is inconsistent with the current state of California employment law." Specifically, the court decided Jones had not established that an adverse employment action had been taken against him as that term was defined in McRae v. Department of Corrections (2005) 25 Cal.Rptr.3d 911 (previously published at (2005) 127 Cal. App.4th 779 (McRae I).)[12] The court noted, in its JNOV/new trial order, that to succeed on both his sexual orientation discrimination *395 and retaliation cause of action, Jones "had to establish that an adverse employment action had been taken against him." The court stated: "The evidence presented at trial that [Jones's] case was based on a negative performance evaluation as well as several written criticisms regarding [Jones's] job performance.... McRae [I] holds that a negative performance evaluation and written criticisms/warnings do not, in and of themselves individually, or combined, constitute an adverse employment action within the meaning of the causes of action alleged by [Jones], nor did they result in an adverse employment action here. [Jones's] opposition to Defendants'] motions for [JNOV] presented an extensive laundry list of conduct that allegedly amounts to adverse employment actions, however, even presuming each of those items was presented at trial, they do not amount to adverse employment actions within the meaning of [Jones's] claims. The only potentially viable conduct in that list is probation, however, the evidence did not show anything resembling probation occurred with respect to [Jones]. None of the conduct listed detrimentally, substantially or materially change[d] the terms and conditions of [Jones's] employment. Therefore, based on the ... opinion in McRae [I], and considering all of the evidence in the light most favorable to [Jones] in this case, the Court finds there has been no adverse employment action in this case, causing both of [Jones's] claims to fail."
Jones argues, in so many words, that the court's reliance on McRae I's overly restrictive definition of "adverse employment action" was erroneous because the California Supreme Court in Yanowitz has rejected that definition. Jones contends substantial evidence supports the jury's finding of adverse employment action as that term is defined in Yanowitz.
The court's JNOV ruling clearly was based on McRae I's definition of adverse employment action and the court's conclusion that the evidence failed to show an adverse employment action under that definition. McRae I noted that different courts used different definitions of the term "adverse employment action," and that California courts and some federal courts had held "it is not enough for the plaintiff to show that he or she has been subjected to some form of adverse treatment. The plaintiff must show the employer's retaliatory actions had a detrimental and substantial effect on the plaintiffs employment." (McRae I, supra, 25 Cal. Rptr.3d at p. 918, citing Akers v. County of San Diego (2002) 95 Cal.App.4th 1441, 1455, 116 Cal.Rptr.2d 602; Thomas v. Department of Corrections (2000) 77 Gal. App.4th 507, 510-511, 91 Cal.Rptr.2d 770; Robinson v. City of Pittsburgh (3d Cir. 1997) 120 F.3d 1286, 1300; and Torres v. Pisano (2d Cir.1997) 116 F.3d 625, 640.)
McRae I noted some federal courts, including the Ninth Circuit, use a "deterrence test" for determining whether a plaintiff has suffered an adverse employment action. (McRae I, supra, 25 Cal. Rptr.3d at p. 918.) Under that test "an adverse employment action is `"any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."'" (Ibid., citing Ray v. Henderson (9th Cir.2000) 217 F.3d 1234, 1242-1243 (Ray)). McRae I noted "[t]he Ninth Circuit has held that adverse employment actions might include demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations and toleration of harassment by other employees. [Citation.]" (McRae I, supra, at p. 918, citing Ray, supra, at pp. 1241-1242.) Under the Ninth Circuit's test, some adverse employment actions materially affect the *396 terms and conditions of employment and some do not. (McRae I, supra, at p. 918, citing Ray, supra, at p. 1242.)
McRae I rejected the deterrence test as overbroad and held "an adverse employment action means an employment action that causes substantial and tangible harm, such as, but not limited to, a material change in the terms and conditions of employment." (McRae I, supra, at p. 919.) McRae I further held "that while something less than an `ultimate employment action [such as firing, demotion or a reduction in pay]' may be actionable, a plaintiff may seek redress through the courts only for final employment actions; i.e., those that are not subject to reversal or modification through internal review processes." (Ibid., fn. omitted.) As noted, the California Supreme Court granted review in McRae I after the trial court here ruled on defendants' motions for JNOV and new trial (ante, fn. 10), and ultimately retransferred the case to the Court of Appeal for reconsideration in light of Yanowitz, supra, 36 Cal.4th 1028, 32 Cal.Rptr.3d 436, 116 P.3d 1123.
In Yanowitz the California Supreme Court addressed the issue of "the appropriate standard for determining whether an employee has been subjected to an adverse employment action for purposes of a retaliation claim under the FEHA." (Yanowitz, supra, 36 Cal.4th at p. 1049, 32 Cal.Rptr.3d 436,116 P.3d 1123.) Yanowitz rejected the "deterrence standard," used by the Ninth Circuit (and the Court of Appeal in Yanowitz), concluding "the term `otherwise discriminate' in section 12940, [subdivision] (h) should be interpreted to refer to and encompass the same forms of adverse employment activity that are actionable under section 12940, [subdivision] (a).[[13]]" (Id. at pp. 1050-1051, 32 Cal. Rptr.3d 436, 116 P.3d 1123, fn. omitted.)
However, Yanowitz noted "[retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context. Accordingly, although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the work place context of the claim." (Id. at p. 1052, 32 Cal.Rptr.3d 436, 116 P.3d 1123, fn. omitted.) Yanowitz instructs "that the language in section 12940(a) making it an unlawful employment practice for an employer to discriminate against an employee on the basis of race, sex, or the other enumerated characteristics `in compensation or in the terms, conditions, and privileges of employment' properly must be interpreted broadly to further the fundamental antidiscrimination purposes of the FEHA. Appropriately viewed, this provision protects an employee against unlawful discrimination with respect not only to so-called `ultimate employment actions' such as termination or demotion, but also the entire spectrum of *397 employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career. Although a mere offensive utterance or even a pattern of social slights by either the employer or co-employees cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment for purposes of section 12940(a) (or give rise to a claim under section 12940(h)), the phrase `terms, conditions, or privileges' of employment must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide." (Id. at pp. 1053-1054, 32 Cal.Rptr.3d 436, 116 P.3d 1123, fns. omitted.)
Yanowitz further explained that "the determination of what type of adverse treatment properly should be considered discrimination in the terms, conditions, or privileges of employment is not, by its nature, susceptible to a mathematically precise test, and the significance of particular types of adverse actions must be evaluated by taking into account the legitimate interests of both the employer and the employee. Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of sections 12940(a) and 12940(h)." (Yanowitz, supra, 36 Cal.4th at pp. 1054-1055, 32 Cal.Rptr.3d 436, 116 P.3d 1123, italics added, fn. omitted.) "Actions that threaten to derail an employee's career are objectively adverse." (Id. at p. 1060, 32 Cal.Rptr.3d 436, 116 P.3d 1123.)
In considering whether the alleged retaliatory activity against the plaintiff in Yanowitz constituted adverse employment action, Yanowitz stated it was unnecessary to "decide whether each alleged retaliatory act constitutes an adverse employment action in and of itself.... [T]here is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries. [Citations.] Enforcing a requirement that each act separately constitute an adverse employment action would subvert the purpose and intent of the statute." (Yanowitz, supra, 36 Cal.4th at pp. 1055-1056, 32 Cal.Rptr.3d 436, 116 P.3d 1123, fn. omitted.) Therefore, Yanowitz concluded it was appropriate to consider the alleged retaliatory acts against the plaintiff "collectively under a totality-of-the circumstances approach." (Id. at pp. 1052, fn. 11, 1056, 32 Cal.Rptr.3d 436, 116 P.3d 1123.)
McRae I's holding that a plaintiff may seek redress through the courts only for final employment actions that are not subject to reversal or modification through internal review processes is inconsistent with Yanowitz's totality-of-the circumstances approach to determining whether a plaintiff has suffered adverse employment action, which is presumably why the California Supreme Court granted review in McRae I and retransferred the case to the Court of Appeal for reconsideration in light of Yanowitz. The trial court here expressly based its finding of no adverse employment action on McRae I's overly restrictive definition of that term. Thus, the court applied an incorrect standard for determining whether the evidence sufficiently supported the jury's finding of adverse *398 employment, for purposes of ruling on the JNOV motions.
Viewing the evidence in the light most favorable to the jury's verdict, and through the lens of Yanowitz's totality-of-the circumstances approach to determining whether a plaintiff has suffered adverse employment action, we conclude the evidence was sufficient to support the jury's finding that Jones suffered adverse employment actioni.e., action that substantially and materially adversely affected the terms and conditions of his employment. There was evidence that when Jones sent Weiss a memorandum asking him to refrain from making unprofessional remarks, Weiss responded with a tirade and physically intimidated Jones by crumpling his memorandum and throwing it at him. The day after Jones met with Fulks "to complain about sexual orientation discrimination and harassment at LTP, he received the first of a series of employee warning notices from Weissthis one concerning his absence from work the previous day (at Fulks's direction) as a result of being too emotional to work after discussing the harassment he had endured at LTP. About a week and a half later, Jones was summoned to meet with Weiss and Fulks and was presented Weiss's extensive memorandum charging him with deficient work performance in a number of areas. Jones viewed the memorandum as a "30-day notice for poor work performance" based on false charges, arid the jury could have reasonably taken the same view. Weiss stopped talking to Jones and began excluding him from weekly LTP management meetings. Weiss and Steen continued to use offensive language in the workplace and Jones overheard Steen threaten to "punch the faggot in the mouth."
Although Jones made it clear during his disability leave that he wanted to return to his job at LTP and would not take a demotion, when his leave expired, Fulks placed him on paid administrative leave until the issue of where he would return to work was resolved. Fulks and the general manager of LTP told Jones he could return to LTP but he was still on his 30-day probation and his sudden disability leave had "burn[ed] a bridge" with LTP's management. When Jones told Fulks he had met with a representative of DFEH, Fulks accused him of "blackmailing" the hotel.
After Jones returned to work at LTP, he continued to be excluded from meetings and was warned by a coworker to watch his back. There was evidence that during a meeting Weiss said, "We've got to get Scott Jones out of here." After Jones filed his complaint with DFEH, he was excluded from an important "coordination meeting" of Evans Hotels management employees regarding the upcoming Buick Invitational golf tournament. His assistant was included in the meeting and he had previously been included in Buick Invitational coordination meetings. Between December 28, 2001, and January 17, 2002, Jones received four employee warning notices from Weiss for what Jones characterized as "stupid stuff' or "little mistakes" that other employees would not get "written up for."
Based on this evidence and the evidence that Jones was harassed by Weiss and Steen based on his sexual orientation,[14] the jury could reasonably conclude that Jones suffered adverse treatment in the form of *399 a series of damaging injuries that would be reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotioni.e., actions that threatened to derail his career. (Yanowitz, supra, 36 Cal.4th at pp. 1054-1055, 1060, 32 Cal.Rptr.3d 436, 116 P.3d 1123.) In accordance with the adverse employment action instruction it was given, the jury reasonably could have based its adverse employment action finding on evidence that Jones experienced "significantly diminished material responsibilities" (e.g., exclusion from management and Buick Invitational planning meetings) and "unwarranted probation." Accordingly, the court erred in granting defendants' motions for JNOV on the ground there was insufficient evidence of adverse employment action.[15]

IV. JNOV in Favor of Weiss on the Ground an Individual Cannot Be Held Liable for Retaliation Under FEHA

We agree with Jones that the court erred in granting JNOV in favor of Weiss on the ground a supervisor cannot be held liable for retaliation under FEHA. As noted FEHA retaliation claims are brought under section 12940, subdivision (h), which makes it an unlawful employment practice "[f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part [including section 12941]." (Italics added.)
In its JNOV order the court stated: "[W]ith respect to Defendant Weiss, McClung v. Employment Development Department (2004) 34 [Cal.]4th 467[, 20 Cal. Rptr.3d 428, 99 P.3d 1015] [(McClung)], confirming past opinions, makes it abundantly clear that an individual cannot be held liable for retaliation, the cause of action alleged against Weiss under ... [section] 12940(h)." However, McClung did not address the issue of whether an individual employee can be held liable for retaliation under section 12940, subdivision (h); it addressed the retroactivity of an amendment to section 12940, subdivision (j)(3), which contains FEHA's prohibition against harassment and does not address retaliation.[16]
Defendants argue that the reasoning of Reno v. Baird (1998) 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (Reno), which held individual supervisors are not liable for employment discrimination under FEHA (id. at pp. 644-663, 76 Cal. Rptr.2d 499, 957 P.2d 1333), applies equally to retaliatory personnel actions. Although Reno discussed a number of reasons supporting its conclusion that there is no individual liability for discrimination under FEHA, it largely based that conclusion on FEHA's differing treatment of harassment and discrimination. Reno observed: "Although the FEHA prohibits harassment as well as Discrimination, it treats them differently. It prohibits `an employer *400 ... or any other person' from harassing an employee. (§ 12940, subd. (h)(1), italics added.) It defines a `person' as including `one or more individuals,
partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries.' (§ 12925, subd. (d).) The FEHA, however, prohibits only `an employer' from engaging in improper discrimination. (§ 12940, subd. (a).)" (Reno, supra, 18 Cal.4th at p. 644, 76 Cal.Rptr.2d 499, 957 P.2d 1333.) Reno later noted: "[T]he Legislature has ... distinguished between discrimination and harassment. Whatever similarities there may be between the two, the employer ultimately does the former; coworkers and supervisors do the latter. Harassment claims are legitimately distinguished from discrimination claims because they are based on different, types of conduct. Behavior that gives rise to a harassment claim is not related to performing one's job duties except insofar as it occurs within the work environment. Behavior that gives rise to a discrimination claim, on the other hand, is often indistinguishable from performing one's job duties. Thus, the Legislature properly tailored the FEHA in order to address these distinct claims." (Id. at p. 657, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)
Walrath v. Sprinkel (2002) 99 Cal. App.4th 1237, 121 Cal.Rptr.2d 806 (Walrath) decided that a cause of action against a supervisory employee is not barred by Reno. Walrath stated: "[T]here is authority recognizing a common law cause of action for retaliatory wrongful discharge as well a cause of action against an individual supervisor for retaliation in violation of FEHA. Blom v. N.G.K Spark Plugs (U.S.A), Inc. (1992) 3 Cal.App.4th 382[, 4 Cal.Rptr.2d 139] and Carmichael v. Alfano Temporary Personnel (1991) 233 Cal.App.3d 1126[, 285 Cal.Rptr. 143] recognize a common law cause of action for wrongful discharge in retaliation for an employee's action seeking to correct employment discrimination. (See also Stevenson v. Superior Court (1997) 16 Cal.4th 880[, 66 Cal.Rptr.2d 888, 941 P.2d 1157] [recognizing common law cause of action for wrongful discharge in violation of public policy against age discrimination].) Page v. Superior Court (1995) 31 Cal. App.4th 1206[, 37 Cal.Rptr.2d 529] held that an individual supervisor may be liable for retaliation against an employee in violation of FEHA.
"Although the foregoing cases were decided prior to Reno v. Baird, supra, 18 Cal.4th 640[, 76 Cal.Rptr.2d 499, 957 P.2d 1333], there are later cases as well. The Ninth Circuit Court of Appeals held in 2001 that Reno v. Baird does not apply to a retaliatory termination claim against an individual supervisor under the FEHA because a different statute is involved. (Winarto v. Toshiba America Electronics Components (9th Cir.2001) 274 F.3d 1276, 1288.) In contrast to the discrimination provision at issue in Reno v. Baird, which applies only to `an employer' (§ 12940, subd. (a)), the retaliation provision of the FEHA, applies to `any employer, labor organization, employment agency, or person' (§ 12940, subd. (h)). The Ninth Circuit found the difference in statutory language dispositive and concluded that an individual supervisor may be held personally liable for retaliation under the FEHA. The court noted that `[e]very federal district court that has considered this issue since Reno has concluded that Reno does not apply to retaliation. E.g., Peterson v. Santa Clara Valley Medical Center, 2000 WL 98262 (N.D.Cal.2000); Sbo v. United Parcel Serv., Inc., 73 F.Supp.2d 1126 (N.D.Cal.1999); Liberto-Blanck v. City of Arroyo Grande, 33 F.Supp.2d 1241 (C.D.Cal.1999); Kaminski v. Target *401 1998 WL 575097 (N.D.Cal.1998).' (Winarto v. Toshiba America Electronics Components, supra, 274 F.3d at p. 1288.) In each case, Reno v. Baird was distinguished on the basis of the difference in the statutory language regarding retaliation and the reference to `person' indicating a legislative intent to allow individual liability for retaliatory acts by supervisors. We agree with these cases and therefore conclude that Reno ... is not controlling as to a cause of action for retaliation." (Walrath, supra, 99 Cal.App.4th at pp. 1241-1242, 121 Cal.Rptr.2d 806, fn. omitted; accord, Taylor v. City of Los Angeles Dept. of Water & Power (2006) 144 Cal. App.4th 1216, 1237, 51 Cal.Rptr.3d 206 (Taylor).)
Defendants argue Walrath was wrongly decided and that under the reasoning of Carrisales, the language in section 12940, subdivision (h), making the prohibition against retaliation applicable to "any ... person" should not be construed as imposing individual liability against a supervisor for retaliatory acts. In Carrisales, supra, 21 Cal.4th at pp. 1134-1140, 90 Cal.Rptr.2d 804, 988 P.2d 1083, the California Supreme Court held that liability for sexual harassment under FEHA did not extend to nonsupervisory coworkers even though the statutory provision prohibiting harassment expressly applies to any "employer ... or any other person." (§ 12940, subd. (h).) The Supreme Court's conclusion was largely based on the second sentence of the harassment provision which then stated: "`Harassment of an employee or applicant by an employee other than an agent or supervisor ... shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.'" (Id. at p. 1135, 90 Cal.Rptr.2d 804, 988 P.2d 1083.) Carrisales construed this sentence to mean that harassment by an employee other than an agent or supervisor constituted an unlawful employment practice only if the employer became aware, or reasonably should have become aware, of the harassment and failed to take appropriate corrective action. (Id. at pp. 1135-1136, 90 Cal. Rptr.2d 804, 988 P.2d 1083.) Carrisales concluded: "If the employer takes appropriate action, no unlawful employment practice has occurred. If the employer fails to take such action, there may be an unlawful employment practice, but it is by the employer, not the coworker." (Id. at p. 1136, 90 Cal.Rptr.2d 804, 988 P.2d 1083.)
Although, as noted, the Legislature responded to Carrisales by amending section 12940 to specifically provide that a coworker could be held personally liable for harassment (§ 12940, subd. (j)(3)), McClung held the amendment changed the law regarding liability for harassment and did not apply retroactively. (McClung, supra, 34 Cal.4th at pp. 470-477, 20 Cal. Rptr.3d 428, 99 P.3d 1015.) Therefore, defendants argue, McClung reaffirmed the validity of Carrisales's reasoning (that a FEHA reference to unlawful employment practice being committed by a "person" does not mean an individual employees is subject to liability for the unlawful practice).
We do not read Carrisales and McClung as mandating a construction of section 12940, subdivision (h), that precludes individual liability for retaliation. Carrisales expressly declined to decide the issue of whether individuals can be liable for retaliation under that provision. Carrisales noted that a couple of cases contain dicta suggesting individuals can be liable for retaliation because the statutory prohibition against retaliation extends to "persons" and observed: "However, whatever rule might apply to retaliation (we express no opinion), the statutory language regarding retaliation contains no additional language *402 comparable to the second sentence of section 12940(h)(1). We must construe section 12940(h)(1) in its entire context, not reference to the quite different overall language of section 12940, subdivision (f)."[17] (Carrisales, supra, 21 Cal.4th at p. 1138, 90 Cal.Rptr.2d 804, 988 P.2d 1083, italics added.) The italicized statement in Carrisales shows that the high court's interpretation of the statutory harassment provision as not subjecting individual employees to liability was based on language that is not present in section 12940, subdivision (h)'s prohibition against retaliation.
We agree with Walrath and Taylor that an individual supervisor can be held liable for retaliation under section 12940, subdivision (h). Accordingly, we conclude the trial court erred in granting JNOV in favor of Weiss on the ground he cannot be held personally liable for retaliation.

V. Grant of New Trial On the Grounds of Insufficient Evidence and Erroneous Jury Instructions Regarding Adverse Employment Action

Reversal of the JNOV requires review of the order granting a new trial.[18] The court granted both Weiss's and The Lodge's motions for new trial on the following grounds, as stated in its written order: "(1) There was insufficient evidence to justify the verdict; and (2) The jury instruction regarding what constitutes an adverse employment action was insufficient in light of McRae [I]." As to The Lodge only, the court granted a new trial on the additional ground of excessive damages. Defendants contend Jones has not challenged the order granting a complete new trial but only the portion of the new trial order granting a new trial as to The Lodge on the ground of excessive damages.
We construe Jones's opening brief as also challenging the order granting a complete new trial on the grounds of insufficient evidence to justify the verdict and insufficient jury instructions on the meaning of adverse employment action. Both of these stated grounds for the order granting a complete new trial were based on the court's application of McRae I's overly restrictive view of what constitutes adverse employment action. In his opening brief, Jones argues there is substantial evidence he suffered adverse employment action, as that term is explained in Yanowitz, and that the court erred by applying McRae I's overly restrictive definition of the term. We read this argument as going to both the JNOV and order granting a new trial. Jones's brief contains the assertion, in an argument heading, that the trial court improperly limited the scope of the evidence "when ruling on JNOV/new trial[.]" (Capitalization omitted.) In connection with his discussion of Yanowitz, Jones also stated: "Yanowitz is controlling and the trial court's reliance upon McRae I in granting JNOV/New Trial resulted in prejudicial error." These references indicate that Jones intended his argument regarding the sufficiency of the evidence to support a finding of adverse employment action *403 under Yanowitz to go to both the JNOV order and new trial order.
Motions for new trial in civil cases are governed by Code of Civil Procedure section 657.[19] "`Generally, the new trial order will be affirmed if it should have been granted on any ground stated in the motion, regardless of whether the trial judge specified that ground and even if the judge failed to specify any grounds.' [Citation.] However, `if it appears on appeal that a trial court in granting a new trial based its order exclusively upon an erroneous concept of legal principles applicable to the cause, its order will be reversed.' [Citation.]" (Rickley v. County of Los Angeles (2004) 114 Cal.App.4th 1002, 1008-1009, 8 Cal.Rptr.3d 406 (Rickley); Conner v. Southern Pacific Co. (1952) 38 Cal.2d 633, 637, 241 P.2d 535.)
Here, the court essentially ruled, in accordance with its ruling on defendants' motions for JNOV, that defendants were entitled to a new trial because there was insufficient evidence of adverse employment action as that term was defined in McRae I and because the jury was not instructed on adverse employment action in accordance with McRae I. To the extent the new trial order is based on McRae I's overly restrictive view of what constitutes adverse employment action, it must be reversed on the ground it is based on an erroneous concept of legal principles applicable to the cause. (Rickley, supra, 114 Cal.App.4th at pp. 1008-1009, 8 Cal. Rptr.3d 406; Mason, supra, 117 Cal. App.4th at p. 831, 11 Cal.Rptr.3d 914 [order granting new trial reversed because it was based on same ground as erroneous order granting JNOV].)

VI. Grant of New Trial As To The Lodge On the Ground of Excessive Damages

Jones contends the court erred in granting a new trial on the ground of excessive damages as to The Lodge. The *404 court's order on that point states: "[T]he Court ... finds the verdict of $1.5 million is excessive as it bears no relationship to the special damages or facts in this case. [Citation.] The jury's award effectively amounts to an award of punitive damages, which were not available in this case." We asked the parties to submit supplemental letter briefs on the issue of whether the trial court sufficiently complied with the requirement under Code of Civil Procedure section 657 that it specify its reasons for granting a new trial on the ground of excessive damages, citing the parties to Stevens v. Parke, Davis & Co. (1973) 9 Cal.3d 51, 59-63, 107 Cal.Rptr. 45, 507 P.2d 653 (Stevens). We conclude the court did not sufficiently comply with that requirement
Code of Civil Procedure section 657 provides in relevant part: "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated." Section 657 further provides that "on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons." "The procedural steps specified in [section 657] are `mandatory and must be strictly followed. [Citations.]' " (Smith v. Moffat (1977) 73 Cal. App.3d 86, 91, 140 Cal.Rptr. 566, citing Mercer v. Perez (1968) 68 Cal.2d 104, 118, 65 Cal.Rptr. 315, 436 P.2d 315 and La-Manna v. Stewart (1975) 13 Cal.3d 413, 422-423, 118 Cal.Rptr. 761, 530 P.2d 1073.)
Stevens discussed the rules applicable to a determination of the sufficiency of a trial court's specification of reasons under Code of Civil procedure section 657, stating: "We have said that `[n]o hard and fast rule can be laid down as to the content of such a specification, and it will necessarily vary according to the facts and circumstances of each case.' [Citation.] However, we have emphasized on several occasions that if the ground relied upon is `insufficiency of evidence,' the trial judge's specification of reasons `must briefly identify the portion of the record which convinces the judge "that the court or jury clearly should have reached a different verdict or decision."' [Citations.] [¶] ... [¶][O]nly in this way [can] the twofold purpose of the specification exacted by the statute be fulfilled. That purpose ... [is] to encourage careful deliberation by the trial court before ruling on the new trial motion and to make a sufficiently precise record to permit meaningful appellate review. [Citation.]" (Stevens, supra, 9 Cal.3d at pp. 60-61, 107 Cal.Rptr. 45, 507 P.2d 653.) A specification of reasons phrased in terms of ultimate facts is insufficient. (Id. at p. 61, 107 Cal.Rptr. 45, 507 P.2d 653.)
Stevens held that "the same rules that apply to a specification of reasons in respect to the ground of insufficiency of the evidence should apply to a specification of reasons in respect to the ground of excessive or inadequate damages. Indeed, to state that the damages awarded by the jury are excessive is simply one way of saying that the evidence does not justify the amount of the award. [Citations.] The same statutory test applies in determining whether a new trial should be granted either on the ground of excessive or inadequate damages, or on the ground of insufficiency of the evidence. In addition, *405 [Code of Civil Procedure] section 657 provides that, only as to these two grounds, `it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, ...' In light of the parallel treatment of the two grounds in the statute, we are of the opinion that what we have said as to the required content of the specification where `insufficiency of the evidence' is relied upon should apply where `excessive or inadequate damages' is the designated ground." (Stevens, supra, 9 Cal.3d at pp. 61-62, 107 Cal.Rptr. 45, 507 P.2d 653, fn. omitted.)
The new trial order here is comparable to that in Stevens, in which the trial court ruled: "`On the issue of excessiveness of the verdict, the Court finds that the verdict is excessive, that it is not sustained by the evidence, and that it is based upon prejudice and passion on the part of the jury. It is therefore ordered that a new trial be granted, on the issue of damages only, unless the plaintiffs consent to a remission of the verdict to the sum of $60,000.00 general damages plus $4,673.42 special damages....'" (Stevens, supra, 9 Cal.3d at p. 59, fn. 9, 107 Cal.Rptr. 45, 507 P.2d 653.) Stevens found this order failed to sufficiently specify the reasons for the ruling, stating: "[T]he new trial order makes no pretense of specifying reasons upon which the judge based his decision to grant defendants' motions. The statement that the Verdict is excessive, that it is not sustained by the evidence' is ... a statement of ultimate fact that does not go beyond a statement of the ground for the court's decision. It does not indicate the respects in which the evidence dictated a less sizable verdict, and fails even to hint at any portion of the record that would tend to support the judge's ruling. Certainly the statement that the amount of the verdict was `based upon prejudice and passion on the part of the jury' is not a `reason' that provides an insight into the record." (Stevens, supra, 9 Cal.3d at p. 62, 107 Cal.Rptr. 45, 507 P.2d 653, italics added.)
Similarly, the statement in the new trial order here that the verdict is excessive and "bears no relationship to the special damages or facts in this case" is essentially a statement of ultimate fact that does not go beyond stating the ground of excessive damages.[20] The court's excessive damages determination was more likely based on its conclusion there was no adverse employment action under McRae (an erroneous application of the law) than on the sufficiency of Jones's emotional distress evidence to support the noneconomic component of the damages award. Like the order in Stevens, the order here "does not indicate the respects in which the evidence dictated a less sizable verdict, and fails even to hint at any portion of the record that would tend to support the [excessive damages finding]." (Stevens, supra, 9 Cal.3d at p. 62, 107 Cal.Rptr. 45, 507 P.2d 653.) The order makes no reference to any specific evidence of Jones's emotional distress and associated physical symptoms or his preexisting psychological problems. At minimum, the order should have included an explanation of why the court found Jones's evidence of general damages insufficient to support the jury's award.[21]
*406 Additionally, like the statement in Stevens that the verdict was "`based upon prejudice and passion on the part of the jury'" (Stevens, supra, 9 Cal.3d at p. 59, fn. 9, 107 Cal.Rptr. 45, 507 P.2d 653), the court's statement here that "[t]he jury's verdict effectively amounts to an award of punitive damages, which were not available in this case" "is not a `reason' that provides an insight into the record." (Stevens, supra, 9 Cal.3d at p. 62, 107 Cal. Rptr. 45, 507 P.2d 653; see also Zhadan v. Downtown L.A. Motors (1976) 66 Cal. App.3d 481, 492-493, 136 Cal.Rptr. 132 [trial court's specification of reasons for ordering a new trial on the ground of excessive damages was insufficient where the trial court ordered the new trial "`for the reason the damages appeared to have been given by the jury under the influence of passion or prejudice.'"].) As noted, a principal purpose of the specification-of-reasons requirement under section 657 is to facilitate meaningful appellate review. (Stevens, supra, 9 Cal.3d at p. 61, 107 Cal.Rptr. 45, 507 P.2d 653.) That statutory purpose is not met here by the conclusory language of the court's new trial order regarding excessive damages.
A court's failure to adequately specify reasons renders a new trial order defective but not void. (Thompson v. Friendly Hills Regional Medical Center (1999) 71 Cal.App.4th 544, 550, 84 Cal. Rptr.2d 51 (Thompson), citing Sanchez-Corea v. Bank of America (1985) 38 Cal.3d 892, 900, 215 Cal.Rptr. 679, 701 P.2d 826.) Under Code of Civil Procedure section 657, we independently review all the grounds advanced for the new trial motion and sustain the order "`If it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons....' [Citation.] That review includes searching the record, with the assistance of the party for whom the new trial was granted, `to find support for any other ground stated in the motion....' [Citation.]" (Thompson, supra, 71 Cal.App.4th at p. 550, 84 Cal. Rptr.2d 51, citing Mercer v. Perez, supra, 68 Cal.2d at p. 119, 65 Cal.Rptr. 315, 436 P.2d 315.) The burden is on the respondent "to furnish a record and argument to support the order granting the new trial on any grounds not set forth in the order. [Citations.]" (Tagney v. Hoy (1968) 260 Cal.App.2d 372, 377, 67 Cal.Rptr. 261 (Tagney).) The burden of furnishing sufficient argument for this purpose can be met by including the new trial motion in the record or through argument raised by the respondent in a protective cross-appeal, and the burden of furnishing an adequate record can be met by the respondent's counter designation of the record where the appellant's designation is inadequate. (See ibid.)
We view the issues raised in defendants' cross-appeal as The Lodge's advancement *407 of other grounds stated in the motion upon which the order should be affirmed, as the issues were raised in The Lodge's motion for new trial and go to the grounds of irregularity in the proceedings (Code Civ. Proc, § 657(1)) and errors of law (Code Civ. Proc, § 657(7)).[22] Accordingly, we will address those issues in the context of considering whether The Lodge's motion for new trial "should have been granted upon any ground stated in the motion...." (Code Civ. Proc, § 657.)

A. Court's Refusal to Give Defendants' Proposed Instruction Pertaining to the Meaning of Adverse Employment Action

In their cross-appeal, defendants contend the court prejudicially erred by refusing to give an instruction they proposed on the meaning of "adverse employment action." In defendants' words: "[T]he jury was instructed on only half the legal story as to the critical issues of whether Jones suffered an adverse employment action. Although the trial court instructed the jury with examples of conduct constituting an adverse employment action, it erroneously refused to instruct the jury with examples of conduct not constituting an adverse employment action."[23] Defendants contend the court should have given the following instruction they proposed at trial: "Items such as a negative performance evaluation, oral or written criticisms, rude or hostile behavior by supervisors or co-workers, [or] minor changes in scheduling or duties do not constitute `adverse employment actions,' even if the employee feels they are unwarranted. Similarly, discussions about a possible, but never completed, transfer do not constitute an adverse employment action." Defendants explain that the refused instruction is derived from various appellate opinions addressing the issue of what constitutes adverse employment action.
"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (Soule v. General Motors Corp. (1994) 8 Cal.4th 548, 572, 34 Cal.Rptr.2d 607, 882 P.2d 298.) However, "[t]he practice of taking excerpts from the opinions of courts of last resort and indiscriminately changing them into instructions to juries has frequently been condemned. [Citations.]" (Ernest W. Hahn, Inc. v. Sunshield Insulation Co. *408 (1977) 68 Cal.App.3d 1018, 1023, 137 Cal. Rptr. 732; Fibreboard Paper Products Corp. v. East Bay Union of Machinists (1964) 227 Cal.App.2d 675, 718, 39 Cal. Rptr. 64 (Fibreboard) [defendants took "snippets from several opinions and nimbly concatenated them into distorted and inadequate statements of legal principles]" resulting in incomplete, misleading and argumentative instructions].) "Instructions should state rules of law in general terms and should not be calculated to amount to an argument to the jury in the guise of a statement of law. [Citations.] Moreover, it is error to give, and proper to refuse, instructions that unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition. [Citations.]" (Fibreboard, supra, 227 Cal.App.2d at p. 718, 39 Cal. Rptr. 64.) Finally, "[e]rror cannot be predicated on the trial court's refusal to give a requested instruction if the subject matter is substantially covered by the instructions given. [Citations.]" (Id. at p. 719, 39 Cal.Rptr. 64; Hyatt v. Sierra Boat Co. (1978) 79 Cal.App.3d 325, 335, 145 Cal.Rptr. 47.)
The trial court properly refused to give the refused instruction in question here, as it is highly argumentative and unduly emphasizes defendants' defense that Jones did not suffer adverse employment action. The instruction essentially would have directed the jury to exclude all of the specific acts forming the basis of Jones's claim of adverse employment action from the general definition of adverse employment action the court gave the jury  a definition that correctly and adequately covered the subject before Yanowitz. Further, the refused instruction exemplifies an improper argumentative instruction fashioned from "snippets from several opinions nimbly ... concatenated ... into distorted and inadequate statements of legal principles." (Fibreboard, supra, 227 Cal.App.2d at p. 718, 39 Cal.Rptr. 64.) Consisting entirely of examples of specific acts that, according to the instruction, do not constitute adverse employment action, the instruction is legally incorrect because under Yanowitz's totality of the circumstances approach to determining whether a plaintiff has suffered adverse employment action, the acts specified in the instruction, considered collectively, could constitute adverse employment action under certain circumstances. (Yanowitz, supra, 36 Cal.4th at pp. 1052, fn. 11, 1056, 32 Cal.Rptr.3d 436, 116 P.3d 1123.) The court did not err in refusing to give the instruction.

B. Court's Admission of Evidence That Weiss And Steen Made Sexual Comments About Women And That Jones Complained About Offensive Conduct

Defendants assert that during their opening statement at trial, they admitted Jones had properly complained to HR about Steen's comments about Jones's sex life and that his complaint was legally protected activity.[24] Defendants also point *409 out that during trial, they sought to file a written admission that Jones complained to HR about Steen.[25] Consequently, defendants contend, the court abused its discretion by allowing Jones to present evidence that he complained to HR about offensive conduct and evidence tending to show he believed in good faith he was opposing unlawful employer conduct. Defendants contend this evidence was relevant only to show the judicially admitted fact that Jones engaged in legally protected conduct when he complained in the reasonable, good faith belief he was opposing unlawful conduct; it was irrelevant to Jones's retaliation claim because it was not probative of whether Weiss and The Lodge took retaliatory adverse employment action against Jones. Defendants argue the evidence would have been relevant only to whether Weiss and The Lodge sexually harassed female employeesa nonissue in this caseand they were severely prejudiced by its admission because it was highly inflammatory.
The trial court has broad discretion in ruling on the admissibility of evidence, and its ruling will be upheld on appeal unless there is a clear showing of an abuse of discretion that prejudiced the appellanti.e., a showing the court's ruling exceeded the bounds of reason and it is reasonably probable a result more favorable to the appellant would have been reached absent the error. (Tudor Ranches, Inc. v. State Comp. Ins. Fund (1998) 65 Cal.App.4th 1422, 1431-1432, 77 Cal.Rptr.2d 574; Continental Dairy Equip. Co. v. Lawrence (1971) 17 Cal. App.3d 378, 384, 94 Cal.Rptr. 887.)
Evidence offered on an issue that has been entirely removed by an admission in the pleadings is completely irrelevant and the court has no discretion to admit it. (Fuentes v. Tucker (1947) 31 Cal.2d 1, 7, 187 P.2d 752 (Fuentes).) However, "[t]he introduction of evidence of admitted facts is permissible in cases where the admission is ambiguous in form or limited in scope or where, during the trial of a case, a party seeks to deprive his opponent of the legitimate force and effect of material evidence by the bald admission of a probative fact. [Citations.]" (Id. at pp. 7-8, 187 P.2d 752.)
If defendants' admission in opening statement and the written admission they offered during trial qualify as issue-removing admissions under Fuentes, we must ask: What issue or issues did they remove from this case? The only thing established by defendants' purported admission was the legal point that making a reasonable, good faith complaint about conduct that is unlawful under FEHA is protected activity under FEHA. The "admission" did not establish any fact that would render the substance of Jones's complaint to HR completely irrelevant under Fuentes, and the admission should not have deprived Jones of the ability to inform the jury of the specific conduct his complaint to HR *410 concerned.[26] Limiting Jones at trial to presenting evidence that he made a legally protected complaint without allowing him to tell the jury what he was complaining about would have deprived him "of the legitimate force and effect of material evidence by the bald admission of a probative fact." (Fuentes, supra, 31 Cal.2d at p. 7, 187 P.2d 752.) The court recognized this principle when it stilted: "I don't think the jury is going to understand in a naked context, if you will, that some sort of a complaint was brought and it was a protected activity and Mr. Jones thought it was true, unless we have some sort of explanation about what that complaint was." Accordingly, the court ruled Jones could testify "about the complaint he brought to the management" and "what he reported and that he thought that it was true, and that's it."
Evidence of the specific acts Jones complained about was relevant to Jones's retaliation claim, as it showed Weiss's motive for retaliating against Jones for making the complaint. Without knowing the substance of Jones's complaint, the jury would have had sufficient information to adequately assess whether Weiss's negative evaluation of Jones's performance was legitimate or retaliatory. The specific acts Jones complained of were also relevant to the issue of his general damages for emotional distress. The jury could reasonably view the stress and anxiety Jones experienced as a result of Weiss's and Steen's inappropriate conduct toward female employees under his charge as a contributing factor to the emotional distress he suffered as a result of retaliation for complaining about that conduct. We find no abuse of discretion in the court's allowing Jones to present evidence concerning his complaint to HR and of his good faith belief that he was opposing unlawful employer conduct.

C. Other Contentions in The Lodge's Motion For New Trial

The only other issues or assignments of error raised in The Lodge's motion for new trial that are not covered in its cross-appeal or response to Jones's appeal are The Lodge's contentions that (1) the court erred in permitting Jones to circumvent its ruling that The Lodge adequately responded to his internal complaint, and (2) the court should have given a limiting instruction concerning constructive discharge to rebut Jones's improper suggestion that he was forced to resign. Neither contention provides a basis to affirm the new trial order.
Regarding the first contention, The Lodge argued the court had determined as a matter of law in a pretrial summary judgment ruling that The Lodge adequately responded to Jones's internal complaint, but Jones circumvented the court's ruling at trial by repeatedly stating HR failed to conduct any investigation and "swept his complaint under the rug" to keep construction going.[27] Presumably, The Lodge was referring to the following statements in the court's ruling on The Lodge's summary judgment motion: "[E]ven where co-worker *411 harassment occurs, an employer is not liable if its remedial actions are reasonably calculated to end harassment. [Citation.] The undisputed facts show that [T]he Lodge took proper remedial action based on the information received from plaintiff. Furthermore, [T]he Lodge warned Defendant Steen that he would be terminated upon further improper behavior ... and was later terminated after [T]he Lodge received a complaint about his improper comments toward female employees." We do not construe these statements as a legal determination that The Lodge adequately responded to Jones's entire complaint, which involved conduct by both Weiss and Steen. It appears the court concluded only that The Lodge acted properly in response to complaints it received about Steen's harassing conduct and, therefore, could not be held liable for Steen's harassment of Jones. We do not view the quoted statements as removing the issue of whether The Lodge adequately investigated Jones's complaint to HR from the case, and we find no basis in the record to conclude it was prejudicial error warranting a new trial to allow Jones to argue that issue at trial.[28]
Regarding the second contention (that the court should have given a limiting instruction concerning constructive discharge), we find no prejudicial error, as the court expressly instructed the jury: "The claims at issue in this matter are for sexual orientation discrimination and retaliation. These claims are defined elsewhere in these instructions, [¶] There are no claims for constructive discharge (i.e., that Scott Jones was forced to resign) or for sexual harassment of either Scott Jones or [his] female co-workers." (Italics added.)
We find no basis to affirm the court's order granting a new trial or to reverse the original judgment. We do not address the remaining assignments of error raised in Jones's opening brief, as he made it clear he sought review of them only if we did not reinstate the original judgment.

DISPOSITION
The judgment entered notwithstanding the verdict and the order granting a new trial are reversed. The judgment previously entered on February 28, 2005, in favor of Jones and against The Lodge and Weiss is reinstated and affirmed. Jones is awarded his costs on appeal.
WE CONCUR: McCONNELL, P.J., and McDONALD, J.
NOTES
[1] All further statutory references are to the Government Code unless otherwise specified.
[2] The exact nature of The Lodge's affiliation with Evans Hotels and the role of Evans Hotels in the management of its hotels is unclear and was a matter of dispute below. Jones's complaint named Evans Hotels as a defendant and The Lodge answered the complaint as "The Lodge at Torrey Pines Partnership, erroneously sued as Evans Hotel Corporation." Despite acknowledging it had been sued (albeit under the wrong name) and making this general appearance, The Lodge moved, unsuccessfully, to quash service of summons of Jones's second amended complaint, contending the court lacked personal jurisdiction over The Lodge because it had not been properly served with second amended complaint. The Lodge also argued it could not be substituted in. place of a Doe defendant because Jones knew The Lodge was his employer when he filed the original complaint.
[3] Steen admitted printing jokes off the Internet and sharing them with a bartender, but denied keeping them in the bar. He also admitted bringing a postcard showing nude transsexuals to work, but denied showing it to Jones, testifying Jones asked to see it.
[4] Fulks testified he did not offer Jones any money.
[5] Defendants explain they filed the summary judgment/adjudication motions before the second amended complaint was filed because trial had been set and their time to move for summary judgment would have otherwise expired.
[6] The court granted Steen's joinder in Weiss's demurrer.
[7] Although the second amended complaint supersedes the first amended complaint and was the operative pleading at trial, the court and the parties apparently agreed that the original motions for summary judgment/adjudication directed to the first amended complaint applied to the unrevised causes of action in the second amended complaint.
[8] Although the court's August 25 order on its face appears to giant summary judgment in favor of Weiss and Steen, the court was actually only granting summary adjudication in their favor on Jones's causes of action for sexual harassment and intentional infliction of emotional distress. The court had not yet ruled on Weiss's and Steen's additional or supplemental summary judgment/adjudication motions challenging the revised cause of action for retaliation in Jones's second amended complaint.
[9] Weiss also filed notice of joinder in The Lodge's motion for new trial.
[10] Prohibited retaliation under the FEHA is addressed in section 12940, subdivision (h), which provides that it is an unlawful employment practice for an "employer ... to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."
[11] Defendants contend Jones has abandoned his sexual orientation discrimination claim because his opening brief seeks reversal only as to his retaliation claim. Although Jones's argument that there is substantial evidence of adverse employment focuses primarily on his retaliation claim, largely because much of the relevant evidence involves conduct that can reasonably be viewed as retaliatory, the argument goes to his sexual orientation discrimination claim as well. E.g., Jones's opening brief includes a list of 12 evidentiary items showing retaliation followed by the statement: "WEISS, Fulk[s'] and Steen's discriminatory and retaliatory conduct caused a `materially adverse change' in JONES'[s] employment, to the extent that JONES was forced to take disability leave for `on-the-job harassment.'" (Italics added.) We do not construe Jones's opening brief as abandoning his sexual orientation discrimination claim.
[12] The California Supreme Court granted review in McRae I and retransferred the case to the Court of Appeal for reconsideration in light of Yanowitz, supra, 36 Cal.4th 1028, 32 Cal.Rptr.3d 436, 116 P.3d 1123 and Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 6 Cal.Rptr.3d 457, 79 P.3d 569. (McRae I, supra, review granted June 29, 2005, opn. ordered nonpub. and trans. Oct. 19, 2005, S133402.) The Court of Appeal's opinion on remand is published and citable as McRae v. Department of Corrections and Rehabilitation (2006) 142 Cal.App.4th 377, 48 Cal. Rptr.3d 313. We refer to the original noncitable opinion as McRae I to distinguish it from the later citable opinion.
[13] Section 12940, subdivision (a), is "the initial and basic antidiscrimination provision of the FEHA applicable to employers." (Yanowitz, supra, 36 Cal.4th at p. 1049, 32 Cal. Rptr.3d 436, 116 P.3d 1123.) Section 12940, subdivision (a), provides it is unlawful for "an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."
[14] Although the court granted summary adjudication in favor of The Lodge, Weiss and Steen on Jones's cause of action for sexual orientation harassment and instructed the jury that there was no claim at issue for sexual harassment of Jones, the jury was presented with substantial evidence that Jones was harassed by Weiss and Steen based on his sexual orientation.
[15] We recognize that in considering whether there was substantial evidence of adverse employment action against Jones, the court did not have the benefit of Yanowitz's clarification of the meaning of that term in the context of FEHA litigation.
[16] The amendment made it clear that a nonsupervisory employee can be held personally liable for harassment, contrary to an earlier holding in Carrisales v. Department of Corrections (1999) 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083 (Carrisales). McClung decided the amendment was not retroactive. (McClung, supra, 34 Cal.4th at p. 477, 20 Cal.Rptr.3d 428, 99 P.3d 1015.)
[17] A number of the subsections of section 12940 were redesignated after Carrisales. Former section 12940, subdivision (h)(1), concerning harassment is now section 12940, subdivision (j)(l), and former section 12940, subdivision (f), concerning retaliation is now section 12940, subdivision (h).
[18] Code of Civil Procedure section 629 provides, in pertinent part: "If the court grants the motion for judgment notwithstanding the verdict or of its own motion directs the entry of judgment notwithstanding the verdict and likewise grants the motion for a new trial, the order granting the new trial shall be effective only if, on appeal, the judgment notwithstanding the verdict is reversed, and the order granting a new trial is not appealed from or, if appealed from, is affirmed."
[19] After setting forth the various grounds on which a motion for new trial can be granted, Code of Civil Procedure section 657 provides: "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated.

"A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision.
"The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk. The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons.
"On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons, except that (a) the order shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion and (b) on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons."
[20] The jury's award of damages necessarily bears some relationship to the facts of this case, as it was the result of the jury's factual findings based on the evidence about the case presented at `trial. Presumably, the court's statement that the verdict "bears no relationship to the ... facts in this case" was intended to convey the court's ultimate fact finding that the amount of the award was insufficiently supported by the evidence.
[21] Regarding the court's view that the award bears no relationship to Jones's special damages, we note there is no general requirement of some reasonable mathematical ratio or other relationship between a plaintiff's special damages and general damages, such that a small award of special damages limits the amount of recoverable general damages. "In fact, there is no specific requirement that any special damages be awarded before general damages may be awarded. [Citation.]" (Westphal v. Wal-Mart Stores, Inc. (1998) 68 Cal.App.4th 1071, 1078, 81 Cal.Rptr.2d 46; Sommer v. Gabor (1995) 40 Cal.App.4th 1455, 1470-1471, 48 Cal.Rptr.2d 235 [$2 million noneconomic damages for defamation with zero economic damages].) ."`[T]here is no fixed or absolute standard by which to compute the monetary value of emotional distress.' [Citations.]" (Pool v. City of Oakland (1986) 42 Cal.3d 1051, 1068, fn. 17, 232 Cal. Rptr. 528, 728 P.2d 1163.) "Pain and suffering are not subject to precise measurement by any scale, and their translation into terms of money damages is peculiarly, the function of the trier of the facts. [Citation.]" (Sexton v. Key System Transit Lines (1956) 144 Cal. App.2d 719, 722, 301 P.2d 612.)
[22] Both The Lodge and Weiss listed every possible statutory ground for a new trial in their notices of intention to move for new trial. However, we consider in this section only those grounds, other than insufficiency of the evidence and excessive damages, addressed in The Lodge's memorandum of points and authorities in support of its new trial motion and cross-appeal. We do not consider whether Weiss's motion for new trial should have been granted on any ground stated in the motion other than those stated in the new trial order because as to Weiss, the court based its order exclusively on an erroneous concept of legal principles regarding the definition of adverse employment action and individual liability for retaliation (Rickley, supra, 114 Cal.App.4th at pp. 1008-1009, 8 Cal.Rptr.3d 406), and there is no problem with the court's specification of reasons.
[23] The court gave the jury the following instruction on adverse employment action: "An `adverse employment action' means only those actions that substantially and materially adversely affect the terms and conditions of an employee's employment. Examples of an adverse employment action include, but are not limited to, termination, a demotion with accompanying decrease in wage or salary, a material loss of benefits, significantly diminished material responsibilities, or unwarranted probation."
[24] Defense counsel stated: "[Steen] made a rude and inappropriate remark about Mr. Jones'[s] personal life. But he did not make that remark directly to Mr. Jones. Mr. Jones was nowhere around when he made the remark to another employee, who in turn repeated that remark to Mr. Jones. That employee was Jayme Miller. After Jayme Miller repeated Mr. Steen's inappropriate remark to Mr. Jones, Mr. Jones went to Human Resources to make a complaint about Mr. Steen. That was on June 7, 2001. And the defendants admit that it was the right thing for Mr. Jones to do, to go to Human Resources on June 7th and make a complaint about the kind of remark that Mr. Steen had made about his personal life."

When the court later asked defense counsel "What admission do we have in the record at this stage?", defense counsel replied, "The admission we are making is, as to the first element of a cause of action for retaliation, that Mr. Jones engaged in legally protected activity when he went to Human Resources to make a complaint on June 7th, 2001."
[25] It is unclear from the record whether defendants' written admissions were filed. The facts defendants sought to admit were as follows: "1. On June 7, 2001, ... Jones made a complaint to Human Resources about offensive comments and conduct by co-worker Jerry Steen; [¶] 2. Jones assisted a female coworker in making a complaint to Human Resources on June 18, 2001.[¶] 3. In September of 2001 Jones made a complaint about The Lodge and Jerry Steen to the [DFEH]. [¶] 4. In October of 2001 Jones amended his [DFEH] complaint to include a complaint against Jean Weiss."
[26] The admission made in defendants' opening statement was limited or at least ambiguous as to scope, as it appeared to address only Jones's complaint about Steen's conduct and not his complaint about Weiss.
[27] Jones's counsel emphasized The Lodge's failure to adequately investigate Jones's complaint to HR in both opening and closing statements to the jury. Counsel concluded opening statement by stating: "But the important factor to remember is that we had a very, very serious complaint that was filed in this case. This was unlike any other complaint that Jim Fulks ever experienced. It was easier for him to sweep it under the rug and not take it seriously than to protect and address sexual and civil rights."
[28] We are mindful that defendants did not raise this issue in their cross-appeal.